IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| | § | |
| In re | § | Chapter 11 |
| | § | |
| AUTOSEIS, INC., *et al.*,[1] | § | Case No. 14-20130 |
| | § | |
| Debtors. | § | Joint Administration |
| | § | Requested |
| | § | |

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING REJECTION OF UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASE *NUNC PRO TUNC*

### NOTICE UNDER BLR 9013-1(b)

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1] The Debtors in these chapter 11 cases are:  Autoseis, Inc. (5224); Global Geophysical Services, Inc. (4281); Global Geophysical EAME, Inc. (2130); GGS International Holdings, Inc. (2420); Accrete Monitoring, Inc. (2256); and Autoseis Development Company (9066).

Autoseis, Inc. and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), file this *Motion For An Order Authorizing Rejection of an Unexpired Non-residential Real Property Lease Nunc Pro Tunc* (the "Motion").  In support of the Motion, the Debtors incorporate by reference the *Declaration of Sean M. Gore in Support of First Day Motions and Applications* (the "First Day Declaration") and respectfully represent as follows:

<h3 style="text-align:center">JURISDICTION AND VENUE</h3>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The Court's consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

<h3 style="text-align:center">PROCEDURAL BACKGROUND</h3>

2.      On March 25, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.      The Debtors remain in possession of their property and are operating their business as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been requested or appointed in this chapter 11 case.

<h3 style="text-align:center">BACKGROUND</h3>

**A.      General Background**

4.      A detailed description of the Debtors' business, capital structure, and the events leading to these chapter 11 cases is fully set forth in the First Day Declaration and is incorporated herein by reference.

**B.      The Lease**

5.      Debtor Global Geophysical Services, Inc. ("GGS") is party to an unexpired non-residential real property lease that the Debtors have determined, in their business judgment, is a net liability for the estates.  The lease to be rejected pursuant to this Motion, attached hereto as Exhibit A (the "Lease"), corresponds to commercial office space located at 840 Gessner, Houston, Texas, 77024.  The Lease is a sublease, under which GGS subleases space from Doris USA, Inc. as sublessor (the "Lessor").  Notably, the Debtors have already vacated the premises, and there is no justification for the incursion of post petition administrative expenses.

<center>RELIEF REQUESTED</center>

6.      Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors seek entry of an order authorizing them to reject the Lease, and all amendments thereto, effective *nunc pro tunc* to the Petition Date (the date on which the Motion is filed).

<center>BASIS FOR RELIEF</center>

**A.      Rejection of the Lease Should be Authorized Under Bankruptcy Code Section 365(a) as an Exercise of the Debtors' Sound Business Judgment**

7.      Bankruptcy Code Section 365(a) provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Under Section 365 of the Bankruptcy Code, a debtor may relieve itself of burdensome agreements where performance still remains.  *See Stewart Title Guar. Co. v. Old Republic Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (stating that Section 365 "allows a [debtor] to relieve a bankruptcy estate of burdensome agreements which have not been completely performed").

8.      The decision to assume or reject an executory agreement is a matter within the "business judgment" of the debtor.  *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 465 U.S.

513 (1984). *See also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003). The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del 2001); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

9.      Rejection of an executory contract is appropriate where rejection would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989). The standard for rejection is satisfied when a debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Haw. Dimensions, Inc. (In re Haw. Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("Under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate."). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an executory contract. *See Federal Mogul*, 293 B.R. at 126.

10.      As set forth above, the Debtors have determined that the Lease is no longer beneficial to the Debtors' estates and their creditors. This is especially so given that GGS has already vacated the premises. Absent the relief sought, GGS may otherwise be obligated to pay rent due the first of the month. *See* 11 U.S.C. § 365(d)(3). Accordingly, the Debtors have determined that it is in the best interests of the estates and their creditors to reject the Lease.

**B.      Bankruptcy Code Section 105 Supports Rejection of the Lease**

11.      Bankruptcy Code Section 105 authorizes this Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105.

For the reasons set forth herein, rejection of the Lease is proper and in accordance with Bankruptcy Code Section 105.

**C.      Rejection as of the Petition Date is Appropriate**

12.      Bankruptcy courts have the authority to make rejection retroactively effective. *See In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D.Tex. 1996) (authorizing rejection retroactively effective as of the petition date); *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D.Tex. 2003) (authorizing rejection of leases for vacated properties effective as of the date of the filing of the motion to reject);  *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (acknowledging bankruptcy court's equitable power to order retroactive rejection of non-residential lease to date of motion by lessee); *Thinking Machs. Corp. v. Mellon Fin. Svcs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1029 (1st Cir. 1995) (acknowledging bankruptcy court's equitable power to order retroactive rejection).  Granting the Motion *nunc pro tunc* to the Petition Date is appropriate here because (i) the Debtors have vacated the premises associated with the Lease and (ii) the Motion is filed on the Petition Date.

**D.      Rejection Damages**

13.      To the extent that the Lessor intends to claim any damages resulting from the rejection of the Lease, the Debtors request that the Court order that the deadline for filing a proof of claim be thirty days after entry of the order on this Motion.

<u>**NOTICE**</u>

14.      Notice of this Motion has been provided to: (a) the Debtors and the Debtors' professionals; (b) the United States Trustee for the Southern District of Texas; (c) any debtor-in-possession lender in these cases; (d) TPG Specialty Lending, Inc. and its counsel; (e) Tennenbaum Capital Partners, LLC and its counsel; (f) Bank of New York Mellon Trust

Company, N.A. as indenture trustee; (g) the 30 largest unsecured creditors of the Debtors on a consolidated basis; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; (j) all statutory committees appointed in these cases; (k) all parties requesting notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (l) all parties on whom the Court orders notice.  Notice of this Motion has also been provided to the Lessor.  The Debtors believe that the notice provided for herein is fair and adequate and no other or further notice is necessary.

WHEREFORE the Debtors respectfully request entry of an order, substantially similar to the proposed forms of order attached hereto, granting the relief requested here and such other relief the Court may deem proper.

Date:  March 25, 2014

Respectfully submitted,

BAKER BOTTS L.L.P.

/s/ C. Luckey McDowell
C. Luckey McDowell, State Bar No.  24034565
Omar Alaniz, State Bar No. 24040402
Ian E. Roberts, State Bar No. 24056217
2001 Ross Avenue
Dallas, Texas  75201
Telephone:  214.953.6500
Facsimile:   214.953.6503
Email: luckey.mcdowell@bakerbotts.com
          omar.alaniz@bakerbotts.com
          ian.roberts@bakerbotts.com

JORDAN, HYDEN, WOMBLE, CULBRETH &
HOLZER, P.C.

Shelby A. Jordan, State Bar No. 11016700
Nathaniel Peter Holzer, State Bar No. 00793971
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Telephone:   361.884.5678
Facsimile:    361.888.5555
Email: sjordan@jhwclaw.com
          pholzer@jhwclaw.com

**PROPOSED COUNSEL TO DEBTORS-IN-POSSESSION**

## Exhibit A

**Lease to be Rejected**

## Operational & SOX Approvals

The below signatures evidence review and approval of the;

**LEASE AGREEMENT** by and between **Doris USA, Inc.** ("Sublessor') and **Global Geophysical Services, Inc.** ("Sublessee") for <u>the entire 3rd floor (~24,192 RSF) of Three Memorial City Plaza, 840 Gessner, Suite 350, Houston, Texas 77024.</u>  The Sublease will expire on July 31, 2016.

In compliance with **Section 5.3 Leases** of the Global Geophysical Services, Inc. *Delegation of Authority and Approval Policy*, effective August 27, 2013;

**Value / Spend:**  <u>"Sublease Rent" totaling $1,172,423.65 as tabulated in Exhibit "B" of the attached Agreement, plus operating expenses and parking charges.</u>

CFO: _____  Date: __10/2/2013__

GC: _____  Date: __10/2/2013__

VP, Administration: _____  Date: __10/2/13__

Controller: _____  Date: __10 - 2 - 2013__

_____  Date: _____

_____  Date: _____

_____  Date: _____

FIRST AMENDMENT OF SUBLEASE

This FIRST AMENDMENT OF SUBLEASE is made hereto as of the 1st day of October, 2013 ("Effective Date') by and between Doris USA, Inc., a Texas corporation ("Sublessor"), and Global Geophysical Services, Inc., a Delaware corporation ("Sublessee").

WITNESSETH:

Whereas Sublessor and Aperio Energy Partners, LLC ("Aperio") entered in to a Sublease Agreement dated November 10, 2011 covering approximately 4,956 square feet of rentable area on the 3rd floor of Three Memorial City Plaza, located at 840 Gessner, Houston, Texas 77024, known as Suite 350 (the "Original Sublease"), and which Original Sublease was assigned by Aperio to Sublessee by an Assignment and Consent Agreement dated February 19, 2013 between Aperio, Sublessee and Sublessor (collectively the Original Sublease, as modified by the Assignment and Consent Agreement, the "Sublease"); and

Whereas Sublessor and Sublessee wish to amend the Sublease as hereinafter set forth; and

THEREFORE, in consideration of the premises and mutual covenants herein contained, the undersigned parties agree as follows:

I.        Sublessor and Sublessee hereby agree that the Sublease Premises, as defined in the Original Sublease, shall, effective on 10/1/2013 ("Expansion Commencement Date"), be expanded to include an additional approximately 19,236 square feet of rentable area (the "Additional Sublease Premises"), more particularly described and marked in "yellow" in Exhibit "A" attached hereto and made a part hereof for all purposes. From and after the Expansion Commencement Date, the Sublease Premises will consist of a total of approximately 24,192 square feet of rentable area, and will be known as Suite 350, covering the entire 3rd Floor of the Primary Lease Premises. The Sublease will expire on July 31, 2016 ("Expiration Date").

II.       Sublessor will deliver the Additional Sublease Premises to Sublessee in broom clean condition immediately upon receipt by Sublessor of the Landlord's Consent to First Amendment to Sublease fully executed by Landlord (as Landlord is defined in the Sublease).

III.      For the Term of the Sublease, Sublessee shall pay Sublease Rent in accordance with theattached Exhibit "B" attached hereto and made a part hereof for all purposes; it being agreed and understood that the Rent for approximately 4,874 square feet of rentable area will commence on March 1, 2014.

IV.      Sublessee shall also pay Additional Rent on the Additional Sublease Premises pursuant to Section 4 of the Original Sublease.

V.       Sublessee accepts the Additional Sublease Premises in its present "AS-IS, WHERE- IS" condition, and Sublessor shall not provide Sublessee with any improvements or improvement allowance; however, subject to the terms of the Primary Lease:

1)      Sublessor will provide Sublessee with all doors currently held in storage by Sublessor for Sublessee's use to replace existing, damaged doors in the Additional Sublease Premises;

2)      Sublessor will provide Sublessee with all carpet tiles remaining in inventory;

3)      Sublessee shall have the right to use reputable contractors, sub-contractors, architects and engineers of Sublessee's selection for the design and construction of any and all leasehold improvements, and to competitively bid all work;

4)      Sublessee shall be fully responsible for all code (including ADA, fire life safety, etc.) compliance within the Sublease Premises as a result of its construction and occupancy;

5)      Except as provided under Section 6.D of the Original Sublease, all leasehold improvements, at Sublessor's option, shall remain and be surrendered with the Sublease Premises upon expiration or termination of the Sublease;

6)      Reserved;

7)      Sublessee shall have the right to install or construct new entry doors immediately adjacent to the elevator lobby providing access to the Sublease Premises at Sublessee's sole cost and expense; and

8)      Sublessor will provide building standard signage at the entrance of the Sublease Premises, and Sublessee will coordinate with the Landlord and Sublessor to update its directory listing in the lobby of the Building.  Sublessee may display its company name and/or logo within the Sublease Premises visible through the glass entry doors.

VI.      Provided that, and for so long as, no Event of Default has occurred and is continuing under the Sublease, Sublessee will, in addition to the 19 unreserved parking spaces provided for in the Original Sublease, have a nonexclusive right to use 77 unreserved parking spaces (for a total of 96 parking spaces) located within the Garage (as defined in the Primary Lease) during the Term of the Sublease, ten (10) of which may be converted to reserved parking spaces by 30 day's written notice by Sublessee to Sublessor.  Sublessee shall pay Sublessor as Additional Rent each month in advance the following parking fees:  $25.00 for each unreserved parking space plus applicable taxes, and $50.00 for each reserved parking space plus applicable taxes.

VII.      Capitalized terms used but not defined herein shall have the meanings given them in the Original Sublease.

VIII.      Sublessor and Sublessee each hereby agree that, pursuant to the Primary Lease and the Sublease, Landlord must consent to this First Amendment to Sublease and the terms of this First Amendment to Sublease. Accordingly, as a condition precedent to the effectiveness of this First Amendment to Sublease, Landlord must execute and deliver to Sublessor within twenty (20) days after the Effective Date of this First Amendment to Sublease a Landlord's Consent to First Amendment to Sublease in form and substance substantially similar to that set forth on Exhibit "C" attached hereto and

made a part hereof for all purposes. In the event Sublessor fails to obtain the Landlord's Consent to First Amendment to Sublease within the specified twenty (20) day period, either party may terminate this First Amendment to Sublease with written notice to the other party prior to obtaining Landlord's Consent, in which event neither party will have any further rights or obligations to the other with regard to this First Amendment to Sublease, any of the Additional Sublease Premises, or the acceptance of the Doris/GGS Sublease Refusal Offer Letter dated July 29, 2013. The foregoing sentence shall survive such termination.

IX.     Except as otherwise expressly provided herein, Sublessor and Sublessee agree that all of the terms, covenants and conditions of the Sublease also apply to the Additional Sublease Premises. This First Amendment of Sublease shall not be amended, changed or extended except by a written instrument signed by the parties hereto. Except as modified by this First Amendment of Sublease, the Sublease remains unchanged, is ratified by the parties hereto and continues unabated in full force and effect.

X.      Sublessor and Sublessee agree and represent that no finder or broker has been involved in the procurement, negotiation or execution of this First Amendment to Sublease, other than Jones Lang Lasalle in conjunction with CBRE, Inc. ("Sublessor's Broker") and CresaPartners-Houston ("Sublessee's Broker") and that Sublessor's Broker and Sublessee's Broker are the only brokers entitled to a fee or commission for the procurement, negotiation or execution of this First Amendment to Sublease (which Sublessor's Broker commission will be paid solely by Sublessor, pursuant to a separate commission agreement with Sublessor's Broker dated April 3, 2013).

XI.     Provided that no Event of Default shall have occurred and be continuing and Sublessee is subleasing the entire Sublease Premises at such time, Sublessee may, for the period commencing upon the expiration of the Sublease, have the following options: (a) undertake to enter into a direct lease agreement with Landlord covering the Sublease Premises, if (i) Sublessor does not timely exercise its Extension Option (as defined in the Second Lease Extension Agreement and Eleventh Amendment of Lease of the Primary Lease), or (ii) Sublessor exercises its Extension Option or any other extension option Sublessor may have with Landlord and such exercise does not include the Sublease Premises; or (b) enter into an amendment to the Sublease with Sublessor covering the Sublease Premises ("Extension Amendment") if Sublessor exercises its Extension Option and such exercise includes the Sublease Premises, whereas upon Sublessor's receipt of a fully executed amendment to the Primary Lease evidencing same from Landlord, Sublessor will offer by written notice to Sublessee such an Extension Amendment, extending the Sublease for the Sublessor's renewal term at the Base Rentals, Additional Rents and Parking Charges applicable to Sublessor for the Sublease Premises during the Sublessor's extension term, subject to all of the same terms, covenants and conditions of the Sublease and the Landlord's consent requirements set forth in Section VIII hereof, but such consent being applicable to the Extension Amendment. Sublessor shall have 5 business days to unconditionally accept and fully execute the Extension Amendment, after which such offer shall lapse, and Sublessor shall have no further obligation to Sublessee to extend the Sublease. Sublessor shall give Sublessee written notice within 5 business days if it exercises any extension option under the Primary Lease, including but not limited to the Extension Option. Sublessor shall, as a courtesy, provide Sublessee written notice if Sublessor does not exercise its Extension Option or any other extension option Sublessor may have with Landlord within the time frame(s) provided for such exercise.



XII.    Sublessor and Sublessee's current persons, addresses and fax numbers for notices are set forth hereinbelow.

EXECUTED as of the date first above written.

SUBLESSOR:

Doris USA, Inc.

By: _____
Name:  François Thiébaud
Its:  President
Address:  840 Gessner, Suite 400, Houston, TX 77024
Phone No:  832-204-0700
Fax:  713-973-2578

SUBLESSEE:

Global Geophysical Services, Inc.

By: _____
Name:  P. Mathew Verghese
Its:  Sr. VP & CFO
Address:  13927 S. Gessner Road
Missouri City, TX 77489
Phone No:  713-808-7321
Fax:  713-808-7821

EXHIBITS:

Exhibit "A"      Floorplan delineating Additional Sublease Premises
Exhibit "B"      Sublease Rent Schedule
Exhibit "C"      Landlord's Consent to First Amendment of Sublease

EXHIBIT "A"





Page 5 of 12



**EXHIBIT "B"**

**SUBLEASE RENT SCHEDULE**

|  | Original Sublease Premises | | Sublease Premises Expansion | | Sublease Premises Expansion | | Totals |
|---|---|---|---|---|---|---|---|
|  | SF: | 4,956 | SF: | 14,362 | SF: | 4,874 | 24,192 |
|  | $/SF | $/Month | $/SF | $/Month | $/SF | $/Month | $/Month |
| Oct-13 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $0.00 | $0.00 | $26,376.83 |
| Nov-13 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $0.00 | $0.00 | $26,376.83 |
| Dec-13 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $0.00 | $0.00 | $26,376.83 |
| Jan-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $0.00 | $0.00 | $26,376.83 |
| Feb-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $0.00 | $0.00 | $26,376.83 |
| Mar-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $16.00 | $6,498.67 | $32,875.50 |
| Apr-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $16.00 | $6,498.67 | $32,875.50 |
| May-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $16.00 | $6,498.67 | $32,875.50 |
| Jun-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $16.00 | $6,498.67 | $32,875.50 |
| Jul-14 | $17.50 | $7,227.50 | $16.00 | $19,149.33 | $16.00 | $6,498.67 | $32,875.50 |
| Aug-14 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Sep-14 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Oct-14 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Nov-14 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Dec-14 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Jan-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Feb-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Mar-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Apr-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| May-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Jun-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Jul-15 | $19.50 | $8,053.50 | $17.50 | $20,944.58 | $17.50 | $7,107.92 | $36,106.00 |
| Aug-15 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Sep-15 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Oct-15 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Nov-15 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Dec-15 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Jan-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Feb-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Mar-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Apr-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| May-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Jun-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |
| Jul-16 | $19.50 | $8,053.50 | $18.00 | $21,543.00 | $18.00 | $7,311.00 | $36,907.50 |



## EXHIBIT "C"

## CONSENT TO FIRST AMENDMENT TO SUBLEASE

THIS CONSENT TO FIRST AMENDMENT TO SUBLEASE (this "Consent") is made and entered to effective as of _____, 2013, by and between MEMORIAL CITY TOWERS, LTD., a Texas limited partnership ("Landlord"), and Doris USA, Inc., a Texas corporation ("Sublessor").

## RECITALS

Landlord and Sublessor entered into that certain Lease Agreement dated October 12, 2000 (as amended, the "Primary Lease"), whereby Sublessor leased from Landlord those premises described in the Primary Lease (the "Leased Premises").

Sublessor sublet to Aperio Energy Partners, LLC, a Delaware limited liability company ("Original Sublessee") a portion of the Leased Premises (the "Subleased Premises") as provided in the Sublease Agreement dated November 10, 2011 by and between Sublessor and Original Sublessee (the "Sublease Agreement"). Landlord consented to the Sublease Agreement in the Consent to Sublease dated December 7, 2011.  Landlord consented to the assignment of the Sublease Agreement from the Original Sublessee to Global Geophysical Services, Inc. (a Delaware corporation which is the parent corporation of Original Sublessee) ("Sublessee") in a Consent to Assignment of Sublease dated February 19, 2013.

Sublessor and Sublessee desire to expand the Sublease Premises (as defined in the Sublease Agreement) to include an additional approximately 19,236 square feet of rentable area, more particularly described in Exhibit "A" of the attached First Amendment to Sublease according to the terms of the First Amendment to Sublease attached hereto as Exhibit A.

The Primary Lease requires that Sublessor receive the prior written consent of Landlord to any subletting of the Leased Premises or any part thereof, and Landlord has agreed to consent to the assignment of the Sublease Agreement upon the terms set forth herein.

## AGREEMENTS

NOW THEREFORE, in consideration of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord hereby consents to the assignment of the sublease of the Subleased Premises in accordance with the Assignment and Consent Agreement upon the following terms and conditions:

1.    Sublease Materials.  Sublessor warrants and represents that it has provided Landlord with true, correct and complete copies of the First Amendment to Sublease, including all exhibits, riders and schedules, along with other relevant documents and materials regarding the Sublease.  Sublessor warrants and represents that there have been no other amendments or modifications of the Sublease other than the Assignment and Consent Agreement and the First Amendment to Sublease.  A copy of the First Amendment to Sublease, including such exhibits, riders, schedules and other relevant documents and materials is attached to this Consent as Exhibit A.



2.     <u>Nature of Consent</u>.  Landlord's execution of this Consent is limited to Landlord's consent to the First Amendment to Sublease and does not constitute (a) Landlord's consent to any of the particular terms and conditions contained in the First Amendment to Sublease, (b) a ratification of any of the terms in the Sublease, the Assignment and Consent Agreement or the First Amendment to Sublease, (c) a representation or warranty as to any of the matters contained in the Sublease, the Assignment and Consent Agreement or First Amendment to Sublease, (d) Landlord's agreement or consent to be bound or estopped by any provisions of the Sublease, the Assignment and Consent Agreement or First Amendment to Sublease or (e) an assumption by Landlord of any of Sublessor's obligations under the Sublease, the Assignment and Consent Agreement or First Amendment to Sublease.  Sublessor further agrees that Landlord is not a party to the First Amendment to Sublease by granting its consent thereto.  Nothing in this consent constitutes a consent to any future or additional sublease of the Leased Premises, and this Consent is not assignable by any of the parties hereto except as may be necessary to follow the assignment of the Primary Lease in accordance with the terms thereof.

3.     <u>No Modification</u>.  Except as otherwise provided in this Consent, all other terms of the Primary Lease and all obligations of Sublessor under the Primary Lease will remain in full force and effect and will not be modified hereby or by the Sublease Agreement.  In addition, Sublessor agrees not to modify or amend the terms of the Sublease Agreement, the Assignment and Consent Agreement or the First Amendment to Sublease without Landlord's prior written consent.  The Sublease, the Assignment and Consent Agreement and the First Amendment to Sublease will be subordinate to the Primary Lease in all respects, and in the event of any conflict between the Sublease Agreement or the Assignment and Consent Agreement and the Primary Lease, the terms of the Primary Lease will prevail (except with respect to matters which only affect the Sublessor and Sublessee).  Landlord is not responsible for the performance of any of Sublessor's obligations under the Sublease Agreement or the Assignment and Consent Agreement or First Amendment to Sublease.

4.     <u>Primary Lease Terms</u>.  Any violation by Sublessee of the terms and conditions of the Primary Lease will constitute a default under the Primary Lease and this Consent.

5.     <u>Termination of the Primary Lease</u>.  If the term of the Primary Lease naturally expires or the Primary Lease is otherwise terminated by either party for any reason prior to the expiration of the term of the Sublease Agreement, then the Sublease Agreement will terminate automatically.

6.     <u>Commissions; Transfer Taxes</u>.  Landlord is not liable for any real estate transfer taxes or any leasing commission or other amounts which may be due to a broker or agent with respect to the Sublease Agreement, the Assignment and Consent Agreement or the First Amendment to Sublease. Sublessor hereby agrees to indemnify, defend and hold harmless Landlord from and against any claims for such transfer taxes or brokerage or leasing commission which may be due as a result of the transaction which is the subject of this Consent.

7.     <u>Primary Lease Rights</u>.  In no event will Sublessee have the right to exercise any expansion, renewal, extension or preferential rights (whether to purchase or lease and including, without limitation, rights of first offer or rights of first refusal) granted to Sublessor under the Primary Lease.



8.     No Default.  Sublessor agrees that as of the date of this Consent Landlord is not in default under the Primary Lease and Sublessor has no outstanding claims against Landlord.

9.     Conflicts.   In the event of any conflict between the Sublease Agreement or the Assignment and Consent Agreement or the First Amendment to Sublease and this Consent, the terms of this Consent will prevail.

10.    Future Amendments.  No change, amendment, or surrender of the Sublease Agreement or the Assignment and Consent Agreement or First Amendment to Sublease will be effective unless agreed to in writing by Landlord.

11.    Notices.   The proper addresses of the parties to which notices should be sent (in accordance with the notice provisions of the Primary Lease) are as follows:

If to Landlord:


For deliveries:

c/o Metro National Corporation

Attn:  Legal Department

929 Gessner, Suite 2800

Houston, Texas 77024


For mail:

c/o Metro National Corporation

Attn:  Legal Department

P.O. Box 19509

Houston, Texas 77224-9509


If to Sublessor:

Doris USA, Inc.

Attn:  Francois Thiebaud, President

840 Gessner, Suite 400

Houston, TX 77024

12.   _Entire Agreement_.  This Consent constitutes the entire agreement between Landlord and Sublessor with respect to the consent by Landlord to the First Amendment to Sublease.  No other promises or agreement exist between Landlord and Sublessor with respect to the consent by Landlord to the First Amendment to Sublease, and all prior negotiations, statements or representations with respect to the consent by Landlord to the First Amendment to Sublease are superseded and replaced by this Consent.

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS DOCUMENT, THIS DOCUMENT SHALL BECOME EFFECTIVE AND BINDING ONLY UPON THE EXECUTION OF THIS DOCUMENT IN THE FORM OF MANUAL SIGNATURES BY SUBLESSOR AND BY ~~DAVID KELLEY (PRESIDENT AND CHIEF OPERATING OFFICER)~~, RANDY NERREN (SENIOR VICE PRESIDENT) AND WILLIAM M. MOSLEY, JR. (IN THE FORM OF AN ATTESTATION IN HIS CAPACITY AS SECRETARY) ON BEHALF OF LANDLORD AND THE DELIVERY OF A FULLY EXECUTED ORIGINAL OF THIS DOCUMENT TO SUBLESSOR.

EXECUTED as of the date set forth above in multiple counterparts, each of which shall have the full force and effect of an original.

<div style="margin-left:40%">

**LANDLORD:**

**MEMORIAL CITY TOWERS, LTD.**, a Texas limited partnership

**By:**    **MEMORIAL CITY TOWERS GP, LLC**, a Delaware limited liability company, its sole General Partner

</div>

**ATTEST:**

_____
William M. Mosley, Jr., Secretary

By: _____
David Kelley, President & C.O.O.
Loc McNew, President d COO

By: _____
Randy Nerren, Sr. Vice President

SUBLESSOR:

WITNESS/ATTEST:                          DORIS USA, INC.


Marlies Rasberry

By: _____

Name: __Francois THIÉBAUD__

Title: ____President____


Attached

Exhibit A — First Amendment to Sublease