

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

ENTERED
03/28/2014

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| AUTOSEIS, INC., *et al.*[1] | § | Case No. 14-20130 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN
PRIMING AND SUPERPRIORITY POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING
ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363,
AND 364, AND (III) SCHEDULING FINAL HEARING PURSUANT TO
BANKRUPTCY RULES 4001(b) AND (c)**

Upon the motion of the above captioned debtors and debtors in possession, dated March

26, 2014 (the "Motion"),[2] seeking entry of (I) an interim order (this "Interim Order") and (II) a

final order, *inter alia,:*

(a) authorizing Global Geophysical Services, Inc. ("GGS") and its affiliated debtors and

debtors in possession (collectively with GGS, the "Debtors") to obtain secured postpetition

financing on a priming and superpriority basis (the "DIP Facility") pursuant to the terms and

conditions set forth in this Interim Order and in that certain commitment letter with Schedule I

thereto, the accompanying term sheet and the supplemental borrowing request with Schedule I

thereto attached to this Order (as the same may be amended, supplemented, restated or otherwise

---

[1]    The Debtors in these chapter 11 cases are:  Autoseis, Inc.; Global Geophysical Services, Inc.; Global
Geophysical EAME, Inc.; GGS International Holdings, Inc.; Accrete Monitoring, Inc.; and Autoseis
Development Company.

[2]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the
Motion or the DIP Loan Documents (defined below), as applicable.

Active 15349194.4

modified from time to time, the "DIP Financing Commitment Letter"), by and among GGS, as borrower, Autoseis Development Company, Autoseis, Inc., GGS International Holdings, Inc., Accrete Monitoring, Inc. f/k/a Global Microseismic Services, Inc., and Global Geophysical EAME, Inc. f/k/a GGS Lease Co., Inc. (each a "Guarantor", and collectively, the "Guarantors") each lender party thereto (collectively, the "DIP Lenders"), and Wilmington Trust, National Association, in its capacity as administrative and collateral agent (in such capacity, the "DIP Agent") on behalf of the DIP Lenders;

(b) authorizing the Debtors to execute and deliver to the DIP Agent and DIP Lenders the DIP Financing Commitment Letter and any fee letters in connection therewith to be entered into with the DIP Agent;

(c) authorizing the Debtors to execute and deliver to the DIP Agent and the DIP Lenders a final debtor-in-possession credit agreement consistent with the terms of the DIP Financing Commitment Letter and other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be requested by the DIP Lenders, which in each case shall be in all respects reasonably acceptable to the DIP Agent and DIP Lenders (the "Definitive Documentation," as the same may be amended, restated, supplemented or otherwise modified from time to time, and collectively with the DIP Financing Commitment Letter and any fee letters in connection therewith to be entered into with the DIP Agent, the "DIP Loan Documents");

(d) granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, this Interim Order and the Final Order (as defined below), as

applicable (collectively, and including, without limitation, any and all liabilities, covenants, duties, debts and other obligations described in the DIP Loan Documents, the "DIP Obligations"), subject only to the Carve-Out and any other liens and encumbrances permitted by the DIP Loan Documents (such Carve-Out and permitted liens and encumbrances, the "Permitted Priority Liens");

(e) granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

(f) authorizing the Debtors to use Cash Collateral (as defined below);

(g) authorizing the Debtors to grant adequate protection to TPG Specialty Lending, Inc., in its capacity as administrative and collateral agent (in such capacity, the "Prepetition Agent") for certain lenders (the "Prepetition Lenders") under the Financing Agreement, dated as of September 30, 2013, among the Debtors, the Prepetition Lenders, and the Prepetition Agent (as the same has been amended, restated or modified from time to time, the "Prepetition Financing Agreement", and together with all documents or other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents"); and

(h) scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of a final order authorizing the relief requested in the Motion on a final basis, which order shall in all respects be reasonably acceptable to the DIP Agent and DIP Lenders (the "Final Order");

and the interim hearing on the Motion (the "Interim Hearing") having been held on March 27, 2014; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the relief requested

in the Motion is in the best interests of the Debtors, their estates, and creditors and represents a sound exercise of the Debtors' business judgment; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A. _Petition Date._ On March 25, 2014 (the "Petition Date"), the Debtors commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court"). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or "official" committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in any of these Chapter 11 Cases.

B. _Jurisdiction; Venue._ The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

C. _Notice._ Notice of the Motion, the relief requested therein and the Interim Hearing (the "Notice") has been served by the Debtors pursuant to Bankruptcy Rules 2002 and 4001; Bankruptcy Local Rules 2002-1, 4001-1, and 9013-1; and the Complex Chapter 11 Procedures on (i) the Debtors' thirty largest unsecured creditors on a consolidated basis, (ii) counsel to the DIP Agent and counsel to the Prepetition Agent, (iv) the indenture trustee for the Debtors' 10½% Senior Notes Due 2017, (iii) any parties that have filed a notice of appearance in these Chapter

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

11 Cases pursuant to Bankruptcy Rule 2002, (iv) all of the landlords of the Debtors' commercial

real properties, (v) all known holders of liens upon the Debtors' assets and all known parties who

have asserted that they hold liens upon the Debtors' assets, (vi) the United States Attorney for

the Southern District of Texas, (vii) the Internal Revenue Service, (viii) the Securities and

Exchange Commission, and (ix) the United States Trustee for the Southern District of Texas.

Under the circumstances, the Notice constitutes good and sufficient notice of the relief requested,

and no further notice of the relief sought at the Interim Hearing and the relief granted by this

Interim Order is necessary or shall be required.

      D.    <u>Prepetition Indebtedness</u>. For purposes of this Interim Order, the term

"<u>Prepetition Indebtedness</u>" shall mean any Obligations (as such term is defined in the Prepetition

Loan Documents), as of the Petition Date, owed to the Prepetition Agent and the Prepetition

Lenders under the Prepetition Loan Documents; all rights are reserved by all parties in interest

(including the Debtors) regarding the amount, validity, enforceability, and avoidability of the

Prepetition Indebtedness.

      E.    <u>Prepetition Liens</u>. The Prepetition Agent and the Prepetition Lenders allege that,

to secure the Prepetition Indebtedness, the Debtors granted to the Prepetition Agent for the

benefit of the Prepetition Lenders liens upon and senior security interests in (the "<u>Prepetition</u>

<u>Liens</u>") substantially all of the Debtors' property and assets, subject to certain exceptions

(collectively, the "<u>Prepetition Collateral</u>"); all rights are reserved by all parties in interest

(including the Debtors) regarding the extent, validity, enforceability, and avoidability of the

Prepetition Liens.

F.    Debtors' Acknowledgement of Rights Under Order.  In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility, the Debtors acknowledge, represent, stipulate, and agree that:

(i)    upon approval of this Interim Order by the Court, the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral to which any Debtor is a party as of the date hereof;

(ii)    until such time as all DIP Obligations are indefeasibly paid in full in cash the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided to the DIP Agent and the DIP Lenders by offering a subsequent lender or any party in interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a) the Permitted Priority Liens and (b) the Carve-Out (as defined in paragraph 12 below);

(iii)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses (a) on account of any break-up fee and expense reimbursement authorized to be paid to any person or entity, or (b) of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out;

(iv)    none of the DIP Agent or DIP Lenders is a control person or insider of the Debtors, nor owes any fiduciary obligation to the Debtors (including, without limitation, by virtue of or with respect to any of the actions taken by them in respect of or in connection with the DIP Loans).

G.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent has, for the benefit of the DIP Lenders, or the Prepetition Agent may have, for the benefit of the Prepetition Lenders, respectively, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise, and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including, without limitation, insurance policies (including, without limitation, policies for the benefit of directors and officers of the Debtors), in or on which the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders have a lien or a replacement lien, whether as part of the DIP Collateral or the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders holds a lien or replacement lien, whether as part of the DIP Collateral, the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order.

H.    Adequate Protection. Subject to all rights being reserved by all parties in interest with regard to the allowance, validity, non-avoidability and enforceability of the Prepetition Indebtedness and the Prepetition Liens, the Prepetition Agent and Prepetition Lenders shall be granted, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, adequate protection of their respective interests in the Prepetition Collateral, including any Cash Collateral, in exchange for the Debtors' use of such Prepetition Collateral, solely to the extent of the diminution in value, if any, of the Prepetition Collateral, including, without limitation, any diminution in value resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Liens of the Prepetition Agent on and in the Prepetition Collateral, for itself and for the benefit of the Prepetition Lenders, by the DIP Agent or the DIP Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; the Court hereby finds that the respective interests of the Prepetition Agent and the Prepetition Lenders are adequately protected because (i) the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition Indebtedness plus the DIP Obligations, providing a reasonable and sufficient "equity cushion" to protect the interests, if any, of the Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and (ii) the benefits granted to the Prepetition Agent and the Prepetition Lenders by this Interim Order provide additional adequate protection to the Prepetition Agent and the Prepetition Lenders.

I.    Purpose and Necessity of Financing. The Debtors require the financing described in the Motion to (i) permit the continuation of their businesses and preserve their going concern

value consistent with and subject to the terms set forth in the DIP Loan Documents and the Budget (as defined in paragraph 2 below), (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with and subject to the terms set forth in the DIP Loan Documents and the Budget, and (iii) pay fees and expenses to and for the benefit of the DIP Agent and the DIP Lenders related to the DIP Loan Documents and the Chapter 11 Cases. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient secured financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances. A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

J. <u>Good Cause Shown</u>. Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' assets. Among other things, entry of this

Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate

and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of,

the Debtors, their estates and their creditors.

       K.     <u>Sections 506(c) And 552(b) Waivers</u>.  In light of the DIP Agent's and the DIP

Lenders' agreement to permit their DIP Liens and DIP Superpriority Claim to be subject to the

Carve-Out, and in exchange for and as a material inducement to the DIP Agent and DIP Lenders

to agree to provide the DIP Facility and to permit the use of their Cash Collateral for payments

made in accordance with the Budget and the terms of this Interim Order, the DIP Agent and the

DIP Lenders are each entitled to (a) a waiver of any "equities of the case" claims under section

552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the

Bankruptcy Code.

       L.     <u>Good Faith</u>.  The terms of the DIP Loan Documents, including, without

limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more

favorable to the Debtors than those available from alternative sources.  Based upon the record

before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-

length among the Debtors, the DIP Lenders, and the DIP Agent.  Any DIP Loans and other

financial accommodations made to the Debtors by the DIP Agent and the DIP Lenders pursuant

to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the

DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the

Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections

afforded thereby.

       M.     <u>Fair Consideration and Reasonably Equivalent Value</u>.  All of the Debtors have

received and will receive fair and reasonable consideration in exchange for access to the DIP

Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

N.    Immediate Entry of Interim Order. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful reorganization or sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    Disposition. The Motion is granted on an interim basis on the terms set forth in this Interim Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.

**AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL**

2.    Authorization For DIP Financing And Use of Cash Collateral.

     (a)    The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately subject to the terms of this Interim Order, the Budget, and the DIP Loan Documents, in the aggregate principal amount of up to $25,000,000 (the "Maximum

Active 15349194.4

Interim Borrowing"). Available financing and advances shall, on an interim basis, be made to fund, in accordance with the DIP Loan Documents and the Budget, working capital and general corporate requirements of the Debtors, bankruptcy-related costs and expenses (including, without limitation, interest, fees, and expenses in accordance with this Interim Order or the DIP Loan Documents), and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the Budget and the DIP Loan Documents.

(b)     The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Budget and the DIP Loan Documents, without further approval by the Court.

(c)     The Debtors have delivered to the Prepetition Agent and the DIP Agent a thirteen (13) week budget that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through June 20, 2014, a copy of which is attached hereto as Exhibit A (the "Budget"). The Budget shall at all times be subject to the reasonable approval in all respects of the DIP Agent and the DIP Lenders. The Debtors shall provide proposed updates to the Budget for approval by the DIP Lenders in accordance with the terms of the DIP Loan Documents, which, in all events, will be no less frequently than once every two weeks. Funds borrowed under the DIP Loan Documents and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with the DIP Loan Documents, the Budget, and this Interim Order. The consent of the DIP Lenders or the DIP Agent to any Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a Termination Event under this

Interim Order, regardless of whether the aggregate funds shown on the Budget have been expended.

      (d)     Any amendments, supplements or modifications to the Budget must be consented to by the DIP Lenders prior to the implementation thereof and shall not require further notice, hearing, or court order.

      (e)     The DIP Agent and the DIP Lenders (i) may assume the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be amended from time to time. Subject to the terms and conditions of this Interim Order, the DIP Agent and the DIP Lenders shall have the right but not the obligation to extend credit independent of any Budget line item restrictions on loan availability set forth in the DIP Loan Documents, and all such DIP Loans shall be entitled to the benefits and protections of this Interim Order.

      (f)     To the extent any court order is entered directing disgorgement of any payments made by the Debtors to the Prepetition Agent or the Prepetition Lenders either prior to or after the Petition Date, 100% of the proceeds recovered by the Debtors' estates in connection with such order(s) directing disgorgement shall be applied first to repayment of the DIP Obligations, until the DIP Obligations are indefeasibly paid in full in cash, and then to repayment of claims in accordance with the priority scheme set forth in the Bankruptcy Code.

      (g)     For each period beginning on the Petition Date and ending on the last day of each seven-day period set forth in the Budget, the Debtor shall not deviate by more than (i) 15% from the amounts set forth on any line item under the heading "Inflows" or (ii) 15% from the amounts

set forth on any line item under the heading "Outflows," as set forth in the Budget, tested (A) for the first two weeks on a cumulative basis, (B) for the first three weeks on a cumulative basis, and (C) thereafter on a rolling four (4) week basis; provided, however, that it shall not be a default or Event of Default if an adverse variance exceeds the variances described in clauses (i) and (ii) of this paragraph unless (1) the aggregate cumulative variance for all "Inflows" or (2) the aggregate cumulative variance for all "Outflows" exceeds $200,000 during any testing period. Notwithstanding anything to the contrary contained herein, to the extent that the approval of the Court is required to make any disbursement specified in the Budget and such approval is not granted, such disbursement shall be deemed to be removed from the Budget for all purposes.

(h)     To the extent any additional line item is added to the Budget in accordance with the provisions of this Interim Order (and, for the avoidance of doubt, it is anticipated that the line item entitled "Professional Fees" will be both subdivided further and reduced), such line items shall be subject to such variance provisions approved by the DIP Lenders in their reasonable discretion.

3.     Authority to Execute and Deliver Necessary Documents.

(a)     Each of the Debtors is authorized and directed to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto. Each of the Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Agent for itself or on behalf of the DIP Lenders, or by the DIP Lenders.

(b)     Each of the Debtors is further authorized and directed to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim Order.

4.     <u>Valid and Binding Obligations</u>.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.     <u>Termination of DIP Loan Documents</u>.  Notwithstanding anything in this Interim Order to the contrary, the term of this Interim Order and the DIP Loan Documents shall expire, and the DIP Loans made pursuant to this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on the date that is the earliest of (in each case, the "Termination Date"): (i) the 45th day after the date of entry of this Interim Order, if a Final Order has not yet

been entered on the docket of the Court; (ii) the date of final indefeasible payment and

satisfaction in full in cash of the DIP Obligations and the termination of any commitments of the

DIP Agent and the DIP Lenders under the DIP Facility; (iii) the date of substantial

consummation (as defined in section 1101(2) of the Bankruptcy Code) of a confirmed plan of

reorganization in the Chapter 11 Cases; (iv) the date of consummation of a sale or other

disposition of all or substantially all of the assets of the Debtors, whether done by one or a series

of transactions; (v) receipt by the Debtors of written notice from the DIP Agent or the DIP

Lenders of the occurrence of (A) any violation by the Debtors of this Interim Order, (B) an Event

of Default (after expiration of the Remedies Notice Period (defined herein)) under the DIP Loan

Documents shall have occurred and be continuing, or (C) breach of any negative covenant or

affirmative covenant under the DIP Loan Documents, which breach is not cured within the

period specified therefor in the DIP Loan Documents; (vi) the date upon which an order is

entered dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases into a

case under Chapter 7 of the Bankruptcy Code; (vii) the filing of an application for entry of an

order approving the non-consensual use of Cash Collateral; (viii) the filing of a plan of

reorganization or liquidation in any of the Chapter 11 Cases that does not provide for

indefeasible payment in full in cash to the DIP Lenders of the DIP Obligations; (ix) the filing of

an application for entry of an order approving the use of DIP Collateral (other than any

application related to this Interim Order or the Final Order) and/or to obtain financing or loans,

secured by liens that are senior, *pari passu*, or junior to the DIP Agent's and the DIP Lenders'

Liens on DIP Collateral without the prior written consent of the DIP Agent and the DIP Lenders;

(x) the appointment in any of the Chapter 11 Cases of a trustee, receiver, or examiner or other

responsible officer with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of

the Bankruptcy Code), relating to the operation of the business of any Debtor without the prior written consent of the DIP Agent and the DIP Lenders, or any Debtor applies for, consents to, acquiesces in or fails to object to, any such appointment without the prior written consent of the DIP Agent and the DIP Lenders; (xi) this Interim Order is stayed, reversed, vacated, amended, modified in any respect or subject to appeal without the prior written consent of the DIP Agent and the DIP Lenders; (xii) this Court or any other court enters an order or judgment in any of the Chapter 11 Cases modifying, limiting, subordinating, or avoiding the priority of the DIP Obligations or the perfection, priority, or validity of the DIP Superpriority Claim or the DIP Liens or imposing, surcharging, or assessing against the DIP Agent or the DIP Lenders or their claims or any DIP Collateral any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; (xiii) [RESERVED]; (xiv) [RESERVED]; (xv) the Definitive Documents, in form and substance reasonably satisfactory to the DIP Agent and DIP Lenders in their absolute discretion, shall not have been entered into within 21 days after the date on which this Interim Order is entered by the Court; or (xvi) such earlier date on which the DIP Loans shall become due and payable in accordance with the terms of the DIP Loan Documents and/or this Interim Order (each, a "Termination Event").

6.    Authorization for Payment of DIP Financing Fees and Expenses. All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Loan Documents and the DIP Agent's fees and attorneys' fees and expenses), as set forth in the DIP Loan Documents, by the Debtors to the DIP Agent and the DIP Lenders are hereby approved. The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Interim Order, without any requirement that the Debtors, the

DIP Agent, the DIP Lenders, the DIP Agent's counsel, or the DIP Lenders' advisors, file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses. The Debtors shall pay all reasonable prepetition and postpetition out of pocket costs and expenses of the DIP Agent and DIP Lenders (including, without limitation, all reasonable fees, expenses and disbursements of outside counsel and any other advisors, including, without limitation, local counsel, and consultants) in connection with the Chapter 11 Cases and any Successor Case (defined below), including, without limitation, (a) preparation, execution, and delivery of the DIP Loan Documents, this Interim Order, and any Final Order, and the funding of all DIP Loans under the DIP Facility; (b) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Loan Documents, this Interim Order, and any Final Order; and (c) the enforcement or protection of any of their rights and remedies under the DIP Loan Documents, this Interim Order, and any Final Order. Notwithstanding anything to the contrary herein, the fees, costs and expenses of the DIP Agent and DIP Lenders, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned, non-refundable, and irrevocable as of the date of this Interim Order. None of the DIP Agent's nor the DIP Lenders' attorneys, financial advisors and accountants' fees and disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the United States Trustee for this region (the "U.S. Trustee"), and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Any such fees, costs and expenses shall be paid within ten (10) business days of delivery of a summary invoice (redacted for privilege) to the Debtors and without the need for further application to or order of the Court.

7.    Amendments, Consents, Waivers, and Modifications.  The Debtors, with the

written consent of the DIP Agent and the DIP Lenders, may enter into any amendments,

consents, waivers or modifications to the DIP Loan Documents (in accordance with the terms

thereof) without the need for further notice and hearing or any order of this Court.

### DIP LIENS AND DIP SUPERPRIORITY CLAIMS

8.    DIP Lenders' Lien Priority.

(a)    To secure the DIP Obligations, the DIP Agent is hereby granted for the

benefit of itself and the DIP Lenders, pursuant to and in accordance with sections 364(d)(1),

364(c)(2), and 364(c)(3), valid, enforceable and fully perfected (i) first priority priming liens

and senior security interests, senior to any Prepetition Liens, (ii) first priority liens and security

interests, and (iii) solely with respect to any assets upon which Permitted Priority Liens exist,

junior priority liens and security interests (collectively, the "DIP Liens"), as applicable, in and

on all of the property, assets or interests in property or assets of each Debtor, and all "property

of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or

nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter

acquired or created, wherever located, including, without limitation, all of each Debtor's now

owned or hereafter acquired right, title, and interest in and to: (a) all of the property, assets or

interests in property or assets of each Debtor and all "property of the estate" specified in the

DIP Loan Documents, including, without limitation, all of its commercial tort claims

(including, without limitation, any commercial tort claims identified in the DIP Loan

Documents); (b) the proceeds and products, whether tangible or intangible, of any of the

foregoing, including, without limitation, proceeds of insurance covering any or all of the

foregoing, and any money or other tangible or intangible property resulting from the sale,

exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; and (c) all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above, including, without limitation, proceeds of avoidance actions (but excluding all avoidance actions themselves (collectively, the "DIP Collateral"), subject only to (I) the Permitted Priority Liens, and (II) the Carve-Out.

(b)      The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens; and (ii) the Carve-Out.

(c)      The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Agent or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be

inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Loan Documents.

        9.    <u>DIP Lenders' Superpriority Claim</u>.  The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "<u>Successor Case(s)</u>") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of avoidance actions. The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to the Carve-Out.  Except as set forth in this Interim Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case.  The DIP

Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases, and the Adequate Protection Superpriority Claim.

      10.    <u>Survival of DIP Liens and DIP Superpriority Claim</u>.  The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Interim Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtor's Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and any commitment of the DIP Agent and the DIP Lenders have been terminated in accordance with the DIP Loan Documents.

## ADEQUATE PROTECTION

      11.    <u>Adequate Protection for Prepetition Lenders</u>.  As adequate protection solely for any diminution in the value of the Prepetition Collateral, if any, resulting from the incurrence of the DIP Obligations, the use of Cash Collateral, the granting of the DIP Liens, the subordination of the Prepetition Agent and Prepetition Lenders to any right they may have to receive payment from the proceeds of any Prepetition Collateral to the prior payment of the Carve-Out, or otherwise (collectively, the "<u>Diminution Claim</u>"), the Prepetition Agent and the Prepetition Lenders are hereby granted (in each case subject to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) the following ((b) through (e) below shall be referred to collectively as the "<u>Adequate Protection Obligations</u>"):

      (a)    <u>Adequate Protection Liens</u>.  To secure the Diminution Claim, the Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, is hereby granted (effective and

perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition security interests and liens (the "Replacement Liens") in and on all of the DIP Collateral, provided, however, that the Replacement Liens shall be and remain subject and subordinate to (i) the DIP Liens and/or payment of DIP Obligations on account thereof, (ii) the Permitted Priority Liens, and (iii) the Carve-Out.

(b)    Adequate Protection Superpriority Claims.  As further adequate protection for the Diminution Claim, the Prepetition Agent and the Prepetition Lenders are hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Superpriority Claim"), which allowed Adequate Protection Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of avoidance actions.  The Adequate Protection Superpriority Claim shall be subordinate and subject only to the DIP Superpriority Claim and the Carve-Out.

(c)    Fees, Expenses And Interest.  As further adequate protection for the Diminution Claim, the Prepetition Agent and the Prepetition Lenders shall receive, as applicable, from the Debtors:



      (i)    <u>Fees and Expenses</u>. Current cash payment of their fees, costs and expenses (excluding those incurred prior to the Petition Date which remain unpaid as of the Petition Date), including all reasonable fees and disbursements of its counsel and one financial advisor retained by the Prepetition Lenders with services performed during these Chapter 11 Cases. Any such reasonable fees, costs and expenses shall be paid within ten (10) business days of delivery of a summary invoice (redacted for privilege) to the Debtors, the DIP Agent, the DIP Lenders, and any Creditors' Committee, and without the need for further application to or order of the Court. Any and all such requested fees, costs and expenses (including the requested fees and expenses of counsel and other professionals for the Prepetition Agent and the Prepetition Lenders), shall be subject to challenge, recharacterization or reduction by the Debtors, the DIP Agent, the DIP Lenders, and any Creditors' Committee.

      (ii)    <u>Interest</u>. The Debtors shall accrue and pay interest on the Prepetition Indebtedness, as and when such interest is payable under the Prepetition Loan Documents, at the non-default rate applicable to Base Rate Loans until such time as the Prepetition Indebtedness is indefeasibly paid in full in Cash. Any such payments shall be made without prejudice to the rights of the Debtors, any Creditors' Committee or other party in interest to seek to have such payments recharacterized as payments of principal rather than payments of interest, or challenged in any manner.

    (d)    <u>Further Adequate Protection</u>. Nothing in this Interim Order shall, or shall be deemed to, limit, abridge or otherwise affect the rights of the Prepetition Agent or the Prepetition Lenders to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including the Cash Collateral), or to seek further or

additional adequate protection in the event the adequate protection provided herein proves to be inadequate.

**CARVE-OUT; RESTRICTIONS ON USE OF FUNDS**

12.   <u>Carve-Out</u>.

(a)   The DIP Liens, the DIP Superpriority Claim, the Replacement Liens, the Adequate Protection Superpriority Claims and any Prepetition Liens shall be subject and subordinate only to: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "<u>Case Administration Fees</u>"), (ii) professional fees and expenses for the Debtors and any official creditors' committee allowed by the Bankruptcy Court under section 330 of the Bankruptcy Code ("<u>Professional Fees</u>"), and the expenses of members of the official creditors' committee allowed by the Court under section 503(b)(3)(F), solely to the extent that they are (i) incurred or accrued after receipt of written notice of a default or event of default from the Lenders (a "<u>Notice of Default</u>") in an aggregate amount not to exceed $250,000 and (ii) incurred or accrued prior to receipt of a Notice of Default up to the amount so specified for such professional in the Budget for any such fees and expenses (collectively, the "<u>Carve-Out</u>"). Subject to the immediately preceding sentence, so long as no Termination Event has occurred, the Debtors shall be permitted to pay Case Administration Fees and Professional Fees allowed and payable under Bankruptcy Code Sections 330, 331 and 503, as provided in, and subject to, the DIP Loan Documents and the Budget, with any such payment permanently reducing the amount available for such professional under the Budget on a dollar-for-dollar basis. Any payment of Carve-Out expenses incurred after the occurrence of a Termination Event, including any payment of Professional Fees, shall permanently reduce the Carve-Out on a dollar-for-dollar basis. The DIP Lenders' obligation to permit the use of their



Cash Collateral to fund or to otherwise pay the Carve-Out expenses may be reserved against any borrowing availability under the DIP Loan Documents and shall be added to and made part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law, as applicable. Without limiting the generality of the foregoing, (A) no person or entity entitled to payment from the Carve-Out shall be entitled to sell or otherwise dispose, or seek or object to the sale, use, lease or other disposition, of any DIP Collateral or Prepetition Collateral and (B) the Carve-Out shall not include, apply to, or be available for any success fee or similar payment to any professionals or other persons, including without limitation any such fee payable in connection with a restructuring or asset disposition with respect to any of the Debtors or otherwise.

(b)    Nothing contained in this Interim Order shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the DIP Agent or the DIP Lenders (or any other party) to object to the reasonableness of such amounts.

13.    <u>Restrictions on Use of Funds</u>. Notwithstanding anything in this Interim Order or the DIP Loan Documents to the contrary, no proceeds of the DIP Facility, or any DIP Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out, may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor

or party in interest, any Creditors' Committee, any trustee appointed under these Chapter 11

Cases or any Successor Cases, or any other party to (a) request authorization to obtain

postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the

Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the

proceeds of such loans or accommodations are or will be sufficient, and will be (and are actually)

used, to indefeasibly pay in full in cash all DIP Obligations, or (b) investigate (except as set forth

in paragraph 14 below), assert, join, commence, support or prosecute any action or claim,

counter-claim, action, proceeding, application, motion, objection, defense, or other contested

matter seeking any order, judgment, determination or similar relief against, or adverse to the

interests of, in any capacity, the DIP Agent or the DIP Lenders (in any capacity that they may be

a party in interest in these cases), or any of their respective officers, directors, employees, agents,

attorneys, other advisors, affiliates, assigns, or successors, with respect to any transaction,

occurrence, omission, or action, including, without limitation, (i) any avoidance actions or other

actions arising under chapter 5 of the Bankruptcy Code; (ii) any action relating to any act,

omission or aspect of the relationship between or among any of the DIP Agent or the DIP

Lenders, on the one hand, and the Debtors or any of their affiliates, on the other; (iii) any action

with respect to the validity and extent of the DIP Obligations, or the validity, extent, and priority

of the DIP Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole

or in part, the DIP Liens; (v) any action that has the effect of preventing, hindering or delaying

(whether directly or indirectly) the DIP Agent or the DIP Lenders in respect of the enforcement

of their liens and security interests in the DIP Collateral or Cash Collateral; (vi) pay any Claim of

a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent

of the DIP Agent; and/or (vii) use or seek to use Cash Collateral or sell or otherwise dispose of

DIP Collateral, unless otherwise permitted hereby or by the DIP Loan Documents, without the consent of the DIP Lenders.

14.    Reserved.

(a)

15.    Prohibition on Granting of Additional Liens and Interests.  No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to, *pari passu* with, or junior to that of the DIP Liens or the DIP Superpriority Claim granted by this Interim Order, shall be granted while any portion of the DIP Obligations or Prepetition Indebtedness remain outstanding, or any commitment of the DIP Agent and the DIP Lenders under the DIP Loan Documents or Prepetition Loan Documents remains in effect, without the prior written consent of the DIP Agent and the DIP Lenders.

16.    Release.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 16 shall be deemed effective as to the Debtors and any other party in interest in these cases upon entry of the Interim Order.  The Debtors, on behalf of themselves and their estates, forever and irrevocably (a) release, discharge, and acquit the DIP Agent and DIP Lenders, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Agent and DIP Lenders and the Debtors and their affiliates, including, without limitation, any equitable subordination claims or defenses, any and

all claims and causes of action arising under title 11 of the United States Code (the "Debtors' Releases").

## REMEDIES; MODIFICATION OF AUTOMATIC STAY

17.    Remedies and Stay Modification.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(i)    whether or not a Default or an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred (A) to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent and the DIP Lenders under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, (B) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (C) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (D) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this Interim Order;

(ii)    Subject to paragraph 17(a)(iv) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without the need for further

Active 15349194.4                                    29

Court order to permit the DIP Agent, for itself and on behalf of the DIP Lenders, or the DIP Lenders, as applicable, upon the occurrence and during the continuance of an Event of Default, and without any interference from the Debtors or any other party interest but subject to three (3) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) cease making DIP Loans and/or suspend or terminate any commitments of the DIP Agent and the DIP Lenders under the DIP Loan Documents; (B) declare all DIP Obligations immediately due and payable; (C) in the case of the DIP Agent and the DIP Lenders, take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (D) in the case of the DIP Agent and the DIP Lenders, foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (E) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Agent and DIP Lenders); and/or (F) exercise any other default-related rights and remedies under the under the DIP Loan Documents or this Interim Order. The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents.

(iii)    Immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Agent, for itself and the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(iv)     The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  During the Remedies Notice Period, the Debtors shall not be permitted to use any Cash Collateral or any DIP Loan proceeds except to pay expenses reasonably necessary to preserve the Debtors' going concern value. The Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the sole issue at any hearing to re-impose the automatic stay or to obtain any other injunctive or other relief shall be limited to whether or not an Event of Default has occurred and is continuing under the DIP Loan Documents.

(v)     If the DIP Agent and/or DIP Lenders are entitled, and have elected in accordance with the provisions hereof, to enforce their respective liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent or the DIP Lenders in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent or the DIP Lenders (including, without limitation, any collateral liquidator or consultant), (B) providing the DIP Agent or the DIP Lenders and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or the DIP Lenders or their respective representatives, (C) performing all other obligations set forth in the DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the

Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's or the DIP Lenders' enforcement of rights.

(vi)   Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of or an event of default under this Interim Order, or any other Termination Event, and except as otherwise provided in the DIP Loan Documents with respect to the Remedies Notice Period, the DIP Agent and the DIP Lenders shall have no further obligation to provide financing under the DIP Loan Documents and the DIP Agent and the DIP Lenders shall have no further obligation to permit the continued use of Cash Collateral.

(vii)   Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of this Interim Order, or any Termination Event, the DIP Lenders may at all times continue to collect and sweep cash as provided herein, including by a Sweep under paragraph 22 hereof, or as provided in the DIP Loan Documents.

(viii)   This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

**MISCELLANEOUS**

18.   <u>Limitation on Section 506(c) Claims</u>.  No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the DIP Agent or the DIP Lenders, or any of their respective claims, the Carve-Out, or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise,

without the prior written consent, as applicable, of the DIP Agent or the DIP Lenders. No action, inaction or acquiescence by the DIP Agent or the DIP Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Agent or the DIP Lenders, any of their respective claims, the Carve-Out, or the DIP Collateral.

19.     No Marshaling. Neither the DIP Agent nor the DIP Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents.

20.     Equities of the Case Waiver. The DIP Agent and the DIP Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Agent or the DIP Lenders with respect to proceeds, product, offspring or profits of any of the DIP Collateral.

21.     Additional Perfection Measures. The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order. None of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, without limitation, trademark, copyright, trade name or patent assignment

filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)     If the DIP Agent, in its sole discretion, chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP Agent is hereby authorized, but not directed to, take such action or to request that Debtors take such action on its behalf (and the Debtors are hereby authorized and directed to take such action) and:

(i)     any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent may, in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the Collateral, and such filing by the DIP Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

22.    <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the DIP Loan Documents, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent or the DIP Lenders, as the case may be, subject to the payment of or reserve for the Carve-Out, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agent or the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents.  In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Agent (or its designee), (b) upon the occurrence and during the continuance of a Termination Event and the expiration of the remedies Notice Period, each bank or other financial institution with an account of any Debtor is hereby authorized and instructed to (i) comply at all times with any instructions originated by the DIP Agent (or its designee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Agent (or its designee) by wire transfer (to such account as the DIP Agent (or its designee) shall specify, or in such other manner as the DIP Agent (or its designee) shall direct) all such cash, securities, investment property and other items held by it, and (ii) waive any right of set off, banker's lien or other similar lien, security interest or encumbrance as against the DIP Agent (or its designee) (a "<u>Sweep</u>") and (c) any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor and the Prepetition Agent prior to the Petition Date in connection with the Prepetition Loan Documents

shall establish co-control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Agent), and all rights thereunder in favor of the Prepetition Agent shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full.

23.     Access to Collateral.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon three (3) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Loan Documents, a default by any of the Debtors of any of their obligations under this Interim Order, or any other Termination Event has occurred and is continuing, the DIP Agent or the DIP Lenders (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent or the DIP Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph, without interference from lienholders, landlords or licensors thereunder, subject to

such lienholders, landlords or licensors rights under applicable law, provided, however, that the DIP Agent or the DIP Lenders shall pay only base rent payable during the period of such occupancy or use by the DIP Agent or the DIP Lenders, as the case may be, calculated on *a per diem* basis. Nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph.

24.     Cash Management Systems. The Debtors are authorized to maintain their cash management system in a manner consistent with the DIP Loan Documents, this Interim Order, and the order of this Court approving the maintenance of the Debtors' cash management system, provided, however, that such order is and remains at all times on terms and conditions acceptable to the DIP Agent and the DIP Lenders and such order is not inconsistent with the terms specified herein or the DIP Loan Documents.

25.     Delivery of Documentation. The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Agent, counsel to the DIP Agent, any financial advisors to the DIP Agent, the DIP Lenders, and the advisors to the DIP Lenders, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent, the DIP Lenders, and/or the DIP Agent's legal and financial advisors pursuant to the DIP Loan Documents, or (ii) requested by the DIP Agent and/or the DIP Lenders (or their legal and financial advisors).

26.     Access to Books and Records. The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their

Active 15349194.4                                  37

business and activities, (b) timely file all current, quarterly, and annual reports required to be filed with the SEC and maintain GGS's public company filing status, (c) cooperate, consult with, and provide to the DIP Agent and the DIP Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of this Interim Order or that is afforded to the Committee and/or the Committee's respective legal or financial advisors, (d) permit, upon one (1) business day's notice, representatives of the DIP Agent and/or the DIP Lenders to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (e) permit representatives of the DIP Agent and the DIP Lenders to consult with the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

27.     <u>Lenders Not Responsible Persons</u>.  In (a) making the decision to make the DIP Loans; (b) administering the DIP Loans; (c) extending any other financial accommodations to the Debtors under the DIP Loan Documents;; and (d) making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP Agent nor the DIP Lenders (nor any of their respective advisors) shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent rights afforded them under the DIP Loan Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including, without limitation, any environmental law

(including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

28.     Successors and Assigns.  The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders, and each of their respective successors and assigns, including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to, a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

29.     Binding Nature of Agreement.  Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Loan Documents have been or will be properly executed and delivered to the DIP Agent or the DIP Lenders by the Debtors, no later than one business day after entry of this Interim Order.  Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these

Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP

Obligations have first been indefeasibly paid in full in cash and completely satisfied and any

commitments of the DIP Agent and the DIP Lenders terminated in accordance with the DIP

Loan Documents.

30.     Subsequent Reversal or Modification.  This Interim Order is entered pursuant to

section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP

Lenders all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the

provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action

will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by

any of the Debtors to the DIP Agent and the DIP Lenders, prior to the date of receipt by the DIP

Agent and the Prepetition Agent of written notice of the effective date of such action or (b) the

validity and enforceability of any lien or priority authorized or created for the benefit of the DIP

Agent and DIP Lenders under this Interim Order or pursuant to the DIP Loan Documents.

Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness,

obligation or liability incurred by any of the Debtors to the DIP Agent or the DIP Lenders prior

to the receipt of written notice by the DIP Agent of the effective date of such action, shall be

governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the

DIP Lenders, the Prepetition Agent and the Prepetition Lenders, shall be entitled to all the rights,

remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to

all such indebtedness, obligations or liability.

31.     Collateral Rights.  If any party who holds a lien or security interest in DIP

Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the

Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral