**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

ENTERED
04/25/2014

|  |  |  |
|---|---|---|
| In re | § § § | **Chapter 11** |
| **AUTOSEIS, INC.,** *et al.*[1] | § § | **Case No. 14-20130** |
| **Debtors.** | § § § § | **Jointly Administered** |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO
(A) OBTAIN SUPERPRIORITY POSTPETITION FINANCING
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1), AND 364(e) AND GRANT ADEQUATE PROTECTION PURSUANT TO 11
U.S.C. §§ 361, 362 AND 364 AND (B) USE CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363 AND (II) AUTHORIZING DEBTORS TO ENTER INTO A
SETTLEMENT UNDER BANKRUPTCY RULE 9019 AND USE
ESTATE ASSETS IN CONNECTION THEREWITH
WITH PROCEEDS OF POSTPETITION FINANCING UNDER § 363**

Upon the motion of the above captioned debtors and debtors in possession, dated March

26, 2014, as modified, supplemented and superseded (to the extent applicable) by the motion

dated April 14, 2014 (collectively, the "Motion"),[2] seeking entry of a final order (this "Final

Order"), *inter alia*;

(a) authorizing Global Geophysical Services, Inc. ("GGS") and its affiliated debtors and

debtors in possession (collectively with GGS, the "Debtors") to obtain secured postpetition

financing on a superpriority basis (the "DIP Facility") pursuant to the terms and conditions set

forth in this Final Order and in that certain debtor-in-possession Financing Agreement (as the

same may be amended, supplemented, restated or otherwise modified from time to time, the

---

[1]    The Debtors in these chapter 11 cases are:  Autoseis, Inc.; Global Geophysical Services, Inc.; Global
Geophysical EAME, Inc.; GGS International Holdings, Inc.; Accrete Monitoring, Inc.; and Autoseis
Development Company.

[2]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the
Motion or the DIP Loan Documents (defined below), as applicable.

"DIP Financing Agreement"), by and among GGS, as borrower, Autoseis Development Company, Autoseis, Inc., GGS International Holdings, Inc., Accrete Monitoring, Inc. f/k/a Global Microseismic Services, Inc., and Global Geophysical EAME, Inc. f/k/a GGS Lease Co., Inc. (each a "Guarantor", and collectively, the "Guarantors") each lender party thereto (collectively, the "DIP Lenders"), and Wilmington Trust, National Association, in its capacity as administrative and collateral agent (in such capacity, the "DIP Agent") on behalf of the DIP Lenders;

(b) authorizing the Debtors to execute and deliver to the DIP Agent and DIP Lenders the DIP Financing Agreement and any fee letters in connection therewith to be entered into with the DIP Agent;

(c) authorizing the Debtors to execute and deliver to the DIP Agent and the DIP Lenders all other documents, agreements and instruments delivered pursuant to the DIP Financing Agreement or executed or filed in connection therewith, all as may be requested by the DIP Lenders, which in each case shall be in all respects reasonably acceptable to the DIP Agent and DIP Lenders (collectively with the DIP Financing Agreement and any fee letters in connection therewith to be entered into with the DIP Agent, the "DIP Loan Documents");

(d) granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, this Final Order, as applicable (collectively, and including, without limitation, any and all liabilities, covenants, duties, debts and other obligations described in the DIP Loan Documents, the "DIP Obligations"), subject only to the Carve-Out and those certain Permitted Priority Liens as defined by the DIP Loan Documents;

2

(e) granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

(f) authorizing the Debtors to use Cash Collateral (as defined below);

(g) authorizing the indefeasible repayment in full in cash of the Prepetition Indebtedness (as defined below) immediately upon entry of this Final Order pursuant to the terms of the Prepetition Loan Documents and this Final Order;

(h) approving and authorizing the Debtors to enter into that certain "Settlement Agreement," dated April 13, 2014 (the "Settlement Agreement") by and among the Debtors, the DIP Lenders and the Prepetition Lenders pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105(a) and to use the proceeds of the DIP Facility to make the Prepetition Lender Repayment (as defined below); and

(i) authorizing the Debtors to grant adequate protection to the Prepetition Agent and Prepetition Lenders (as those terms are defined below) to the extent set forth herein;

and a hearing on the Motion (the "Interim Hearing") having been held on March 27, 2014, and the Court having entered on March 28, 2014 its *Interim Order (I) Authorizing Debtors to (A) Obtain Priming And Superpriority Postpetition Financing pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral pursuant to 11 U.S.C. §363 (II) Granting Adequate Protection pursuant to 11 U.S.C. §§361, 362, 362, and 364, and (II) Scheduling Final Hearing pursuant to Bankruptcy Rules 4001(b) and (c)* (the "Interim Order") [Docket No. 64], and a final hearing (the "Final Hearing") on the Motion, having been held on April 25, 2014; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing and the Final Hearing; the Court having heard and resolved or overruled any and all objections to the relief requested in the Motion; and

3

it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors and represents a sound exercise of the Debtors' business judgment; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.  <u>Petition Date</u>.  On March 25, 2014 (the "<u>Petition Date</u>"), the Debtors commenced their chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "<u>Court</u>").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, or examiner has been appointed in any of these Chapter 11 Cases.  On April 4, 2014, the Office of the United States Trustee for the Southern District of Texas (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>"), filed the *Notice of Appointment of Official Committee of Unsecured Creditors*, and on the same date, filed the *First Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket Nos. 118, 122].

B.  <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

C.  <u>Notice</u>.  Notice of the Motion, the relief requested therein and the Final Hearing (the "<u>Notice</u>") has been served by the Debtors pursuant to Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"); Bankruptcy Local Rules 2002-1, 4001-1, and 9013-1; and the Complex Chapter 11 Procedures; on (i) the Debtors' thirty largest unsecured creditors on a consolidated basis, (ii) counsel to the DIP Agent and counsel to TPG Specialty Lending, Inc., in its capacity as administrative and collateral agent (in such capacity, the "<u>Prepetition Agent</u>") for certain lenders (the "<u>Prepetition Lenders</u>") under the Financing Agreement, dated as of September 30, 2013, among the Debtors, the Prepetition Lenders, and the Prepetition Agent (as the same has been amended, restated or modified from time to time, the "<u>Prepetition Financing Agreement</u>", and together with all documents or other agreements delivered pursuant thereto or in connection therewith, the "<u>Prepetition Loan Documents</u>"), (iii) counsel to the Creditors' Committee, (iv) any parties that have filed a notice of appearance in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (v) all of the landlords of the Debtors' commercial real properties, (vi) all known holders of liens upon the Debtors' assets and all known parties who have asserted that they hold liens upon the Debtors' assets, (vii) the United States Attorney for the Southern District of Texas, (viii) the Internal Revenue Service, (ix) the Securities and Exchange Commission, and (x) the U.S. Trustee.  Under the circumstances, the Notice constitutes good and sufficient notice of the relief requested, and no further notice of the relief sought at the Final Hearing and the relief granted by this Final Order is necessary or shall be required.

D.  <u>Prepetition Indebtedness</u>. For purposes of this Final Order, the term "Prepetition Indebtedness" shall mean any Obligations (as such term is defined in the Prepetition Loan

Documents), as of the Petition Date, owed to the Prepetition Agent and the Prepetition Lenders under the Prepetition Loan Documents.

      E.      <u>Prepetition Liens</u>. To secure the Prepetition Indebtedness, the Debtors granted to the Prepetition Agent for the benefit of the Prepetition Lenders liens upon and senior security interests in (the "<u>Prepetition Liens</u>") substantially all of the Debtors' property and assets, subject to certain exceptions (collectively, the "<u>Prepetition Collateral</u>").

      F.      <u>Debtors' Acknowledgement of Rights Under Order</u>. In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and the Prepetition Lenders to consent to the DIP Facility, the Debtors acknowledge, represent, stipulate, and agree that:

      (i)      upon approval of this Final Order by the Court, the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral to which any Debtor is a party as of the date hereof;

      (ii)      until such time as all DIP Obligations are indefeasibly paid in full in cash the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided to the DIP Agent and the DIP Lenders by offering a subsequent lender or any party in interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a) the Permitted Priority Liens and (b) the Carve-Out (as defined in paragraph 14 below);

6

(iii)     until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses (a) on account of any break-up fee and expense reimbursement authorized to be paid to any person or entity, or (b) of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out;

(iv)     none of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders is a control person or insider of the Debtors, nor owes any fiduciary obligation to the Debtors (including, without limitation, by virtue of or with respect to any of the actions taken by them in respect of or in connection with the Prepetition Indebtedness or DIP Facility, as applicable);

(v)     the aggregate amount of the Prepetition Indebtedness as of the Petition Date is $98,601,712.22, inclusive of pre-Petition Date interest, fees, the Yield Maintenance Premium and other amounts due and owing under the Prepetition Loan Documents but exclusive of (i) the pre-Petition Date cost and expenses incurred by the Claimants' professionals and (ii) the payment received from the Debtors on March 31, 2014 for interest accrued through March 25, 2014;

(vi)     as of April 25, 2014, the aggregate amount of all Obligations (as defined in the Prepetition Credit Agreement) due and payable under the Settlement Agreement is $91,880,588.32, plus any actual fees and expenses (including attorneys' fees) incurred by the Prepetition Lenders in connection with approval of the Settlement Agreement or the DIP Financing Agreement, which amount incurs post-petition interest at the rate of $24,415.94 per diem after April 25, 2014 (the "Prepetition Lender Repayment Obligations"); provided, however,

that (a) the Prepetition Lender Repayment Obligations shall not include any obligation owed to Bank of America in connection with the provision of bank products under the Prepetition Loan Documents; (b) all of the Prepetition Indebtedness is unconditionally owing by the Debtors to the Prepetition Lenders, and (c) the Prepetition Indebtedness is not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

     (vii)    the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition Indebtedness;

     (viii)    the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other prepetition liens (other than Permitted Liens, as defined in the Prepetition Loan Documents) and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; and

     (ix)    any payments made on account of the Prepetition Indebtedness prior to the Petition Date were (a) on account of amounts in respect of which the Prepetition Agent and the Prepetition Lenders were oversecured with respect to the amounts owed on account of the Prepetition Indebtedness, (b) payments out of the Prepetition Collateral, and/or (c) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors.

G.    Cash Collateral.  For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent has, for the benefit of itself and the DIP Lenders, a lien, security interest or other interest, whether existing on the Petition Date, arising pursuant to the Interim Order or under this Final Order, or otherwise, and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including, without limitation, insurance policies (but excluding proceeds of insurance policies recovered from claims against directors and officers of the Debtors as well as proceeds recovered from any commercial tort claims), in or on which the DIP Agent or the DIP Lenders hold a lien, whether as part of the DIP Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the DIP Agent or the DIP Lenders hold a lien, whether as part of the DIP Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)    the proceeds of any sale of DIP Collateral in connection with any sale consummated prior to entry of the Final Order.

H.    Adequate Protection.  Subject to the limitations contained herein, the Prepetition Agent and the Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral to secure any contingent or unliquidated claims, including, without limitation, any

9

indemnity claims or claims for fees, costs, or expenses, that survive the termination of the Prepetition Loan Documents.

I.    <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Motion to (i) permit the continuation of their businesses and preserve their going concern value consistent with and subject to the terms set forth in the DIP Loan Documents and the Budget (as defined in paragraph 2 below), (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with and subject to the terms set forth in the DIP Loan Documents and the Budget, (iii) pay fees and expenses to and for the benefit of the DIP Agent and the DIP Lenders related to the DIP Loan Documents and the Chapter 11 Cases, and (iv) make the Prepetition Lender Repayment, in full and in cash, which amount has been agreed to by the Prepetition Lenders, the Prepetition Agent, the Debtors, and the DIP Lenders.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient secured financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Agent, for the benefit of itself and the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Final Order and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that (a) the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders, and that (b) making the Prepetition Lender Repayment, in full and in cash, immediately and without any opportunity for

disgorgement, is in the best interests of all of their stakeholders for the reasons set forth in the Motion.

J.      <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Final Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors.  The liquidity to be provided under the DIP Loan Documents will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' assets.  Among other things, entry of this Final Order and making the Prepetition Lender Repayment is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of, the Debtors, their estates and their creditors.

K.      <u>Sections 506(c) Waiver</u>.  In light of the DIP Agent's and the DIP Lenders' agreement to permit their DIP Liens and DIP Superpriority Claim to be subject to the Carve-Out, and in exchange for and as a material inducement to the DIP Agent and DIP Lenders to agree to provide the DIP Facility and to permit the use of their Cash Collateral for payments made subject to and in accordance with the Budget and the terms of the Interim Order and this Final Order, the DIP Agent and the DIP Lenders are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.      <u>Good Faith</u>.  The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtors than those available from alternative sources, of which there are none. Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Lenders, and the DIP Agent (and to the extent applicable, the Prepetition Lenders).  Any DIP Loans and other financial accommodations

11

made to the Debtors by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Final Order have been and shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

M.      <u>Fair Consideration and Reasonably Equivalent Value</u>.  All of the Debtors have received and will receive fair and reasonable consideration in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Final Order.  The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

N.      <u>Immediate Entry of Final Order</u>.  The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).  The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to enable the orderly continuation of the operation of the Debtors' businesses, to make capital expenditures, to satisfy other working capital and operational needs, to fund the Prepetition Lender Repayment immediately, and to fund the costs of the Chapter 11 Cases.  This Court concludes that entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     <u>Disposition</u>.  The Motion is granted on a final basis on the terms set forth in this Final Order.  Any objection to the relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.

<u>**AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL**</u>

2.     <u>Authorization For DIP Financing And Use of Cash Collateral</u>.

(a)   The Debtors are hereby authorized, on a final basis, to incur DIP Obligations subject to the terms of this Final Order, the Budget, and the DIP Loan Documents, in the aggregate principal amount of up to $151,800,000 (the "<u>Maximum Borrowing</u>").  The Debtors are hereby, on a final basis, authorized and directed to fund upon entry of this Final Order and execution of the DIP Financing Agreement, subject to and in accordance with the terms of this Final Order, the DIP Loan Documents and the Budget, (i) working capital and general corporate requirements of the Debtors, (ii) bankruptcy-related costs and expenses (including, without limitation, interest, fees, and expenses in accordance with this Final Order or the DIP Loan Documents), (iii) the Prepetition Lender Repayment and (iv) any other amounts required or allowed to be paid in accordance with this Final Order, but only as and to the extent authorized by the Budget and the DIP Loan Documents.

(b)   The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Final Order, the Budget and the DIP Loan Documents, without further approval by the Court.

(c)   The Debtors have delivered to the DIP Agent a thirteen (13) week budget that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through the week ending July 18, 2014, a copy of which is attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>").  The Budget shall at all times be subject to

13

the reasonable approval in all respects of the DIP Agent and the DIP Lenders, as set forth in the DIP Loan Documents, after consultation with the Creditors' Committee and its professionals. The Debtors shall provide proposed updates to the Budget (i) to the DIP Agent and the DIP Lenders for their approval in accordance with the terms of the DIP Loan Documents, and (ii) to the Creditors' Committee for purposes of consultation with the DIP Lenders and the DIP Agent, which, in all events, will be no less frequently than once every four weeks. Funds borrowed under the DIP Loan Documents and Cash Collateral used under this Final Order shall be used by the Debtors subject to and in accordance with the DIP Loan Documents, the Budget, and this Final Order. The consent of the DIP Lenders or the DIP Agent to any Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a Termination Event under this Final Order, regardless of whether the aggregate funds shown on the Budget have been expended.

(d)     Any amendments, supplements or modifications to the Budget must be consented to by the DIP Lenders, after consultation with the Creditors' Committee and its professionals, prior to the implementation thereof and, except as noted with regard to the Creditors' Committee in this paragraph and the preceding paragraph, shall not require further notice, hearing, or court order.

(e)     The DIP Agent and the DIP Lenders (i) may assume the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be amended from time to time. Subject to the terms and conditions of this Final Order, the DIP Agent and the DIP

Lenders shall have the right but not the obligation to extend credit independent of any Budget line item restrictions on loan availability set forth in the DIP Loan Documents, and all such DIP Loans shall be entitled to the benefits and protections of this Final Order.

        (f)     [Reserved].

        (g)   For each period beginning on the Petition Date and ending on the last day of each seven-day period set forth in the Budget, the Debtors shall not deviate from the amount set forth in any line item of the Budget by (i) any collection being less than 85% of the amounts set forth in any line item under the heading "Inflows" or (ii) any disbursement being more than 115% of the amount set forth in any line item under the heading "Outflows," as set forth in the Budget. The variances provided for in clauses (i) and (ii) of this paragraph shall be tested (A) for the first two weeks on a cumulative basis, (B) for the first three weeks on a cumulative basis, and (C) thereafter on a rolling four (4) week basis; provided, however, that it shall not be a default or Event of Default if an adverse variance exceeds the variances described in clauses (i) and (ii) of this paragraph unless (1) the aggregate cumulative variance for all "Inflows" exceeds the greater of $200,000 and 15% of the aggregate amount set forth in the Budget under the heading "Inflows," or (2) the aggregate cumulative variance for all "Outflows" exceeds the greater of $200,000 and 15% of the aggregate amount set forth in the Budget under the heading "Outflows," during any testing period. Notwithstanding anything to the contrary contained herein, to the extent that the approval of the Court is required to make any disbursement specified in the Budget and such approval is not granted, such disbursement shall be deemed to be removed from the Budget for all purposes.

        (h)     To the extent any additional line item is added to the Budget in accordance with the provisions of this Final Order, such line items shall be subject to such variance provisions

approved by the DIP Lenders in their reasonable discretion, after consultation with the Creditors' Committee and its professionals.

      3.      <u>Approval of Settlement Agreement and Prepetition Lender Repayment</u>.

      (a)      <u>Approval of Settlement</u>.  Based on the evidence presented at the Final Hearing, the Court finds and determines that the Settlement Agreement (i) was negotiated at arms-length and in good faith, (ii) is fair and equitable, (iii) provides substantial benefits to the Debtors' estates as a result of the claim compromised (described in the Settlement Agreement); (iv) is inextricably intertwined with the Debtors' request for approval of the DIP Facility and, as a result, the parties to the Settlement Agreement are entitled to the protections of section 364(e), (v) reflects a compromise that is well above the lowest point in a range of reasonableness, and (vi) is in the best interests of the Debtors, their estates and creditors.  For these reasons and for the reasons stated on the record at the Final Hearing, the Settlement Agreement is hereby approved pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105(a).

      (b)      <u>Prepetition Lender Repayment</u>.  In connection with, and as part of the entry of this Final Order, the Debtors, on a final basis, are expressly and immediately authorized and directed to indefeasibly pay in cash to the Prepetition Agent for the benefit of the Prepetition Lenders an amount equal to the Prepetition Lender Repayment Obligations (the "<u>Prepetition Lender Repayment</u>") in full satisfaction thereof; provided, however, that the Prepetition Lender Repayment shall not include any amounts owed to Bank of America in connection with the provision of bank products under the Prepetition Loan Documents.  The Prepetition Lender Repayment shall be made (i) substantially contemporaneously with the closing of the DIP Financing Agreement, but in no event later than one (1) Business Day following entry of this Final Order and (ii) in accordance with wire transfer instructions provided to the Debtors by the

Prepetition Lenders. All payments made to or for the benefit of the Prepetition Agent or the Prepetition Lenders pursuant to, or otherwise authorized by, this Final Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance. The Prepetition Lender Repayment Obligations shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code (which claim shall be deemed to be satisfied in full by the payment of the Prepetition Lender Repayment pursuant to this Final Order). The Debtors' Stipulations in paragraph F and the releases set forth in paragraph 3(c) below shall be binding on all parties in interest in these Chapter 11 Cases, including, without limitation, the Creditors' Committee. For the avoidance of doubt, the Debtors' obligations to Bank of America, if any, in connection with Bank of America's provision of bank products under the Prepetition Loan Documents shall remain an obligation of the Debtors and are not affected by the payment of the Prepetition Lender Repayment.

     (c)   <u>Release</u>. The Debtors on behalf of themselves and their estates, the DIP Agent and the DIP Lenders, on the one hand, and the Prepetition Agent and Prepetition Lenders, on the other hand, each forever and irrevocably release, discharge, and acquit one another, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between each of them and each of their affiliates, including, without limitation, any equitable subordination claims or defenses, any and

all claims or causes of action arising under the Bankruptcy Code, and any and all claims or causes of action arising under the non-bankruptcy law of any federal, state, or local jurisdiction, relating to or arising under or out of the Prepetition Indebtedness, the Prepetition Loan Documents, these Chapter 11 Cases, or the actions of any of them with respect thereto; provided, however, that in no event shall a party (other than the Prepetition Agent and the Prepetition Lenders, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest) be released to the extent that any claim or cause of action resulted from that party's gross negligence or willful misconduct.

4. <u>Authority to Execute and Deliver Necessary Documents</u>.

(a) Each of the Debtors is authorized and directed to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto. Each of the Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Agent for itself or on behalf of the DIP Lenders, or by the DIP Lenders.

(b) Each of the Debtors is further authorized and directed to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Final Order, and (ii) perform all acts required under the DIP Loan Documents and this Final Order.

18

5.      Valid and Binding Obligations.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Final Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

6.      Termination of DIP Loan Documents.  Notwithstanding anything in this Final Order to the contrary, the term of this Final Order and the DIP Loan Documents shall expire, and the DIP Loans made pursuant to this Final Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Final Order by way of acceleration or otherwise) on the date that is the earliest of (in each case, the "Termination Date"):  (i) the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations and the termination of any commitments of the DIP Agent and the DIP Lenders under the DIP Facility; (ii) the date of substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of a confirmed plan of reorganization in the Chapter 11 Cases; (iii) the date of consummation of a sale or other disposition of all or substantially all of the assets of the Debtors, whether done by one or a series of transactions; (iv) receipt by the Debtors of written

19

notice from the DIP Agent or the DIP Lenders of the occurrence of (A) any violation by the Debtors of this Final Order, (B) an Event of Default (after expiration of the Remedies Notice Period (defined herein)) under the DIP Loan Documents shall have occurred and be continuing, or (C) breach of any negative covenant or affirmative covenant under the DIP Loan Documents, which breach is not cured within the period specified therefor in the DIP Loan Documents; (v) the date upon which an order is entered dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code; (vi) the filing of an application for entry of an order approving the non-consensual use of Cash Collateral; (vii) the filing of a plan of reorganization or liquidation in any of the Chapter 11 Cases that does not provide for indefeasible payment in full in cash to the DIP Lenders of the DIP Obligations; (viii) the filing of an application for entry of an order approving the use of DIP Collateral (other than any application related to this Final Order) and/or to obtain financing or loans, secured by liens that are senior, *pari passu*, or junior to the DIP Agent's and the DIP Lenders' Liens on DIP Collateral without the prior written consent of the DIP Agent and the DIP Lenders; (ix) the appointment in any of the Chapter 11 Cases of a trustee, receiver, or examiner or other responsible officer with enlarged powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of any Debtor without the prior written consent of the DIP Agent and the DIP Lenders, or any Debtor applies for, consents to, acquiesces in or fails to object to, any such appointment or request for such appointment without the prior written consent of the DIP Agent and the DIP Lenders; (x)  this Final Order is stayed, reversed, vacated, amended, modified in any respect or subject to appeal, or motion for rehearing or reconsideration, without the prior written consent of the DIP Agent and the DIP Lenders; (xi) this Court or any other court enters an order or judgment in any of the Chapter 11 Cases

20

modifying, invalidating, limiting, subordinating, or avoiding the priority of the DIP Obligations

or the perfection, priority, or validity of the DIP Superpriority Claim or the DIP Liens or

imposing, surcharging, or assessing against the DIP Agent or the DIP Lenders or their claims or

any DIP Collateral any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy

Code or otherwise; (xii) [RESERVED]; or (xiii) such earlier date on which the DIP Loans shall

become due and payable in accordance with the terms of the DIP Loan Documents and/or this

Final Order (each, a "Termination Event").

       7.     Authorization for Payment of DIP Financing Fees and Expenses.  All fees paid

and payable, and all costs and/or expenses reimbursed or reimbursable (including, without

limitation, all fees, costs and expenses referred to in the DIP Loan Documents and the DIP

Agent's fees and reasonable attorneys' fees and expenses), as set forth in the DIP Loan

Documents, by the Debtors to the DIP Agent or the DIP Lenders are hereby approved subject to

the provisions of this paragraph 7.  The Debtors are hereby authorized and directed to pay all

such fees, costs, and expenses, and such fees, costs and expenses shall be due and payable,

within ten (10) business days of written invoice to the Debtors (including documentation

supporting such invoice), with copies of such written invoice (and any documentation supporting

such invoice) also provided to the United States Trustee and counsel to the Creditors'

Committee; provided that the invoices must provide reasonable detail and may be redacted for

privilege, confidentiality, and work product.   Notwithstanding anything to the contrary herein or

the DIP Loan Documents, if, with respect to any invoices for services performed following the

Petition Date, the Creditors' Committee or the United States Trustee notify counsel to the DIP

Agent, or counsel to the DIP Lenders, as the case may be, in writing by no later than ten (10)

business days following delivery of such invoice of any objection, the objector(s) may file with

21

the Court within such ten (10) business day period and serve upon the professional a written objection to that portion of any such invoice which it believes is not reasonable, stating the reasons why such invoice is not reasonable. If such an objection is filed, the Debtors shall still be obligated to timely make all payments required under this Final Order and the DIP Loan Documents except to the extent of the specific portion subject to the objection. The Debtors shall pay all reasonable prepetition and postpetition out of pocket costs and expenses of the DIP Agent and DIP Lenders (including, without limitation, all reasonable fees, expenses and disbursements of outside counsel and any other advisors, including, without limitation, local counsel, auditors, financial advisors, accountants, consultants or appraisers in each case whether internal or external, provided that the DIP Lenders shall only be entitled to payment of reasonable costs, fees and expenses of one outside primary counsel and any special counsel retained) incurred in any capacity in connection with the Chapter 11 Cases and any Successor Case (defined below), including, without limitation, (a) preparation, execution, and delivery of the DIP Loan Documents, the Interim Order, and this Final Order, and the funding of all DIP Loans under the DIP Facility, and any consents, amendments, waivers or other modifications thereto; (b) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Loan Documents, the Interim Order, and this Final Order; and (c) the enforcement or protection of any of their rights and remedies under the DIP Loan Documents, the Interim Order, and this Final Order, including all of the actual costs and reasonable expenses of creating and perfecting liens in favor of the Prepetition Agent or the DIP Agent, including filing and recording fees, expenses and transfer, stamp or documentary taxes, search fees, title insurance premiums and reasonable fees, expenses and disbursements of counsel to the Prepetition Agent or the DIP Agent, and of counsel providing any opinions that the Prepetition Agent, the DIP Agent, or the

22

DIP Lenders may request in respect of the collateral or the liens created pursuant to the DIP Loan Documents, the Interim Order, or this Final Order.  Notwithstanding anything to the contrary herein, the fees, costs and expenses of the DIP Agent and DIP Lenders, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned, non-refundable, and irrevocable as of the date of the Interim Order and this Final Order.

8.      None of the DIP Agent's nor the DIP Lenders' attorneys, auditors, financial advisors, accountants, consultants or appraisers shall be required to file interim or final fee applications with the Court for allowance and payment of reasonable fees and disbursements, nor shall such advisors be subject to the guidelines of the Office of the United States Trustee. Subject to the provisions set forth in paragraph 7 hereof, any such fees, costs and expenses shall be paid within ten (10) business days of delivery of a summary invoice (redacted for privilege and any confidentiality concerns) to the Debtors, with copies also provided to the Creditors' Committee and the United States Trustee.

9.      Amendments, Consents, Waivers, and Modifications.  The Debtors, with the written consent of the DIP Agent and the DIP Lenders, may enter into any amendments, consents, waivers or modifications to the DIP Loan Documents (in accordance with the terms thereof) without the need for further notice and hearing or any order of this Court, provided, however, that notice of any such amendments, consents, waivers, and modifications will be provided to the Creditors' Committee, provided, however, that any amendments, consents, or waivers that are directly and materially adverse to the interests of the Creditors' Committee will require their consent.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

10.    DIP Lenders' Lien Priority.

(a)    To secure the DIP Obligations, the DIP Agent is hereby granted for the benefit of itself and the DIP Lenders, pursuant to and in accordance with sections 364(d)(1), 364(c)(2), and 364(c)(3), valid, enforceable and fully perfected (i) first priority priming liens and senior security interests, (ii) first priority liens and security interests, and (iii) solely with respect to any assets upon which Permitted Priority Liens exist, junior priority liens and security interests (collectively, the "DIP Liens"), as applicable, in and on all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, wherever located, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to: (a) all of the property, assets or interests in property or assets of each Debtor and all "property of the estate" specified in the DIP Loan Documents or otherwise; (b) the proceeds and products, whether tangible or intangible, of any of the foregoing, including, without limitation, proceeds of insurance covering any or all of the foregoing (excluding proceeds of commercial tort claims and proceeds of any insurance policies recovered from claims made against directors and officers of the Debtors), and any money or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; and (c) all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "DIP Collateral"), subject only to (I) the Permitted Priority Liens, and (II) the

24

Carve-Out, in each case only to the extent provided in this Final Order; provided, however, that

notwithstanding anything to the contrary herein or the DIP Loan Documents, the DIP Collateral

shall not include and the DIP Liens shall not extend to or on (x) 30% of the outstanding equity of

any subsidiary of a Debtor that is not organized under the law of the United States or a state

thereof, and that that are "controlled foreign corporations" for U.S. federal income tax purposes,

(y) any avoidance actions under chapter 5 of the Bankruptcy Code and any proceeds thereof or

property recovered therefrom, or (z) any commercial tort claims and any proceeds thereof or

property recovered therefrom as well as any litigation related to or concerning the Debtors'

directors and officers and any proceeds thereof, property recovered therefrom and any insurance

policies related thereto (collectively, the "Non-Liened Assets"), with the Non-Liened Assets

remaining unencumbered for the benefit of the Debtors' general unsecured creditors.  With

respect to clause (z) of this paragraph, and unless otherwise consented to in writing by the DIP

Agent, no investigation, discovery or any efforts whatsoever may be made with regard to any

commercial tort claims until the earlier to occur of (a) ninety (90) days after the date of entry of

this Final Order or (b) the entry by the Bankruptcy Court of any order approving a disclosure

statement related to a plan of reorganization.

      (b)     The DIP Liens shall be effective immediately upon the entry of this Final Order

and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other

lien, security interest or claim existing as of the Petition Date, or created under sections 363 or

364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens; and (ii)

the Carve-Out, in each case to the extent provided in this Final Order.

      (c)     The DIP Liens shall be and hereby are deemed fully perfected liens and security

interests, effective and perfected upon the date of this Final Order, without the necessity of

25

execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Agent or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, subject to and in accordance with the terms of the DIP Loan Documents and this Final Order.

(d)     Notwithstanding anything to the contrary herein or in any other DIP Loan Document, the liens and security interests of Amegy Bank, N.A. ("Amegy") in and to cash in the Debtors' accounts maintained with Amegy, over which Amegy has control within the meaning of the Uniform Commercial Code as in effect in the State of Texas, to collateralize letters of credit issued by Amegy, pursuant to that certain Letter of Credit Agreement by and between Amegy and the Debtors, dated February 5, 2007, together with related security, control and other documents and agreements, each as subsequently amended, renewed or extended from time to

time, shall be added to and included within the definition of "Permitted Priority Liens," as otherwise defined by the DIP Financing Agreement, for the purposes of this Final Order.

11.     <u>DIP Lenders' Superpriority Claim</u>.  Except as otherwise provided for in this paragraph, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "<u>Successor Case(s)</u>") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof; provided, however, that notwithstanding anything to the contrary herein or the DIP Loan Documents, the DIP Agent, for the benefit of itself and the DIP Lenders, shall not be granted an administrative claim, including DIP Superpriority Claim, that extends to or on or is payable from or has recourse to the Non-Liened Assets.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to the Carve-Out.  Except as set forth in this Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case to any party other than the DIP Agent or the DIP Lenders.  The DIP Superpriority Claim shall be senior in all respects to any superpriority claims

27

granted in these Chapter 11 Cases, and the Adequate Protection Superpriority Claim (as defined below).

12.     <u>Survival of DIP Liens and DIP Superpriority Claim</u>.  The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Final Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtor's Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and any commitment of the DIP Agent and the DIP Lenders have been irrevocably terminated in accordance with the DIP Loan Documents and otherwise.

## ADEQUATE PROTECTION

13.     <u>Adequate Protection for Prepetition Lenders</u>.  As adequate protection of their respective interests in the Prepetition Collateral to secure any contingent or unliquidated claims, including, without limitation, any indemnity claims or claims for fees, costs, or expenses, that survive the termination of the Prepetition Loan Documents (collectively, the "<u>Contingent Claims</u>"), the Prepetition Agent and Prepetition Lenders are hereby granted (in each case subject to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(a)     <u>Adequate Protection Liens</u>. To secure the Contingent Claims, the Prepetition Agent for itself and for the benefit of the Prepetition Lenders, is hereby granted (effective and perfected upon the date of this Final Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other

28

agreements or instruments) valid, perfected, postpetition security interests and liens (the "Replacement Liens") in and on all of the DIP Collateral; provided, however, the Replacement Liens shall be and remain subject and subordinate to (i) the DIP Liens and/or payment of DIP Obligations on account thereof, (ii) the Permitted Priority Liens, and (iii) the Carve-Out.

      (b)      <u>Adequate Protection Superpriority Claim</u>. As further adequate protection for the Contingent Claims, the Prepetition Agent and the Prepetition Lenders are hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claim</u>"), which allowed Adequate Protection Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof; provided, however, that notwithstanding anything to the contrary herein or the DIP Loan Documents, the Prepetition Agent and the Prepetition Lenders shall not have an administrative claim, including an Adequate Protection Superpriority Claim, that extends to or on or is payable from and has recourse to the Non-Liened Assets. The Adequate Protection Superpriority Claim shall be subordinate and subject only to the DIP Superpriority Claim and the Carve-Out.

      (c)      Any and all other adequate protection granted to the Prepetition Agent and Prepetition Lenders pursuant to the Interim Order shall be terminated, with no further force and effect, and to the extent any liens or security interests were granted, shall be deemed null and void, upon the Debtors' making of the Prepetition Lender Repayment, without the need to take any further action. The Debtors shall take any and all reasonable actions to terminate any such

adequate protection that was granted pursuant to the Interim Order including, without limitation, withdrawing the security filings made with regard to various agreements whose proceeds were pledged to the Prepetition Agent and the Prepetition Lenders pursuant to the Interim Order.

(d)     The Replacement Liens and Adequate Protection Superpriority Claim granted to the Prepetition Agent and Prepetition Lenders pursuant to subparagraphs (a) and (b) above shall be automatically terminated, and shall be deemed null and void and of no further force and effect, upon this Final Order becoming a final order no longer subject to appeal within fourteen (14) days from the date of its entry (in such case, a "Non-Appealable Order"), without the need for further Court approval or further action by the Debtors, the Prepetition Agent and Prepetition Lenders, or any other party-in-interest.  If this Final Order becomes a Non-Appealable Order in accordance with the preceding sentence, then the Prepetition Agent and Prepetition Lenders shall not be entitled to any accrual or payment of interest, fees, or expenses (or any other payment of adequate protection) in respect of the Prepetition Indebtedness or under Prepetition Loan Documents from and after the date of the Prepetition Lender Repayment through the date this Final Order becomes a Non-Appealable Order.

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

14.     Carve-Out.

(a)     The DIP Liens, the DIP Superpriority Claim, the Replacement Liens, and the Adequate Protection Superpriority Claim shall be subject and subordinate only to: (i) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), and (ii) professional fees and expenses for the Debtors and the Creditors' Committee allowed by the Bankruptcy Court under section 330 of the Bankruptcy Code ("Professional Fees"), and the expenses of members of the Creditors'

Committee allowed by the Court under section 503(b)(3)(F) (the "Committee Member Expenses" and together with Professional Fees and Case Administrative Fees, "Carve-Out Expenses"), solely to the extent that they are (x) incurred or accrued after receipt of written notice of a default or event of default from the Lenders (a "Notice of Default") in an aggregate amount not to exceed $500,000 for the Debtors' professionals and $350,000 for the Creditors' Committee's professionals (which amount for the Creditors' Committee's professionals shall be allocated as $250,000 for counsel to the Creditors' Committee and $100,000 for the financial advisor to the Creditors' Committee) (the "Post-Default Carve-Out") or (y) incurred or accrued prior to receipt of a Notice of Default up to the amount so specified for such professional in the Professional Fee Schedule attached to the Budget in effect prior to receipt of a Notice of Default for any such fees and expenses (collectively, the "Pre-Default Carve-Out" and together with the Post-Default Carve-Out, the "Carve-Out").  Subject to the immediately preceding sentence, the Debtors shall be permitted to pay Carve-Out Expenses that were incurred or accrued prior to receipt of a Notice of Default allowed and payable under Bankruptcy Code Sections 330, 331 and 503, as provided in, and subject to, the DIP Loan Documents and the Budget, and the payment of such Carve-Out Expenses shall not reduce the Carve-Out.  Any payment of Carve-Out Expenses that were incurred after receipt of a Notice of Default shall permanently reduce the Post-Default Carve-Out on a dollar-for-dollar basis.  The DIP Lenders' obligation to permit the use of their Cash Collateral to fund or to otherwise pay the Carve-Out Expenses may be reserved against any borrowing availability under the DIP Loan Documents and shall be added to and made part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law, as applicable.  Without limiting the generality of the foregoing, (A) no person or

entity entitled to payment from the Carve-Out shall be entitled to sell or otherwise dispose, or seek to sell, use, lease, or otherwise sell or dispose of any DIP Collateral and (B) the Carve-Out shall not include, apply to, or be available for any success fee, financing fee, or similar payment to any professionals or other persons, including without limitation any such fee payable in connection with a restructuring or asset disposition with respect to any of the Debtors or otherwise.

(b)     Nothing contained in this Final Order shall be construed: (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the DIP Agent or the DIP Lenders (or any other party, including the Creditors' Committee) to object to the reasonableness of such amounts.

15.     <u>Restrictions on Use of Funds</u>.  Notwithstanding anything in this Final Order, the Budget, or the DIP Loan Documents to the contrary, no proceeds of the DIP Facility, or any DIP Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out, may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, the Creditors' Committee, any trustee appointed under these Chapter 11 Cases or any Successor Cases, or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the

proceeds of such loans or accommodations are or will be sufficient, and will be (and are actually) used, to indefeasibly pay in full in cash all DIP Obligations, or (b) investigate, assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, in any capacity, the DIP Agent or the DIP Lenders, the Prepetition Agent or the Prepetition Lenders (in any capacity that they may be a party in interest in these cases), or any of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, other advisors, affiliates, assigns, successors, and predecessors in interest, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any action relating to any act, omission or aspect of the relationship between or among any of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, on the one hand, and the Debtors or any of their affiliates, on the other; (iii) any action with respect to the validity and extent of the DIP Obligations or Prepetition Indebtedness, or the validity, extent, and priority of the DIP Liens or the Prepetition Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens; (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Agent or the DIP Lenders in respect of the enforcement of their liens and security interests in the DIP Collateral or Cash Collateral; (vi) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Agent; and/or (vii) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Loan Documents, without the

33

consent of the DIP Lenders; provided, however, notwithstanding the provisions of this paragraph, the advisors to the Creditors' Committee may investigate the validity, extent and priority of any Prepetition Lien and any actions against the Prepetition Agent and the Prepetition Lenders described in (i), (ii) or (iii) of this paragraph 15, prior to the date of entry of this Final Order (collectively, an "Investigation"); provided, further, that notwithstanding anything to the contrary herein, nothing shall prohibit the payment of any and all fees and expenses that were incurred by the Creditors' Committee prior to the date of entry of this Final Order in connection with an Investigation.

16.    [Reserved].

17.    Prohibition on Granting of Additional Liens and Interests.  No liens, claims, interests or priority status, other than the Carve-Out, the Permitted Priority Liens, the Replacement Liens, and the Adequate Protection Superpriority Claim, having a lien or administrative priority superior to, or *pari passu* with, that of the DIP Liens or the DIP Superpriority Claim granted by this Final Order, shall be granted while any portion of the DIP Obligations remain outstanding, or any commitment of the DIP Agent and the DIP Lenders under the DIP Loan Documents remains in effect, without the prior written consent of the DIP Agent and the DIP Lenders.

18.    Release.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 18 shall be deemed effective as to the Debtors and any other party in interest in these cases upon entry of the Final Order.  The Debtors, on behalf of themselves and their estates, forever and irrevocably release, discharge, and acquit the DIP Agent and DIP Lenders, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors,

34

legal advisors, shareholders, managers, consultants, accountants, attorneys, other advisors, affiliates, assigns, successors, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Agent and DIP Lenders and the Debtors and their affiliates, including, without limitation, any equitable subordination claims or defenses, any and all claims and causes of action arising under title 11 of the United States Code (the "Debtors' Releases"); provided, however, that in no event shall a party be released to the extent that any claim or cause of action resulted from that party's gross negligence or willful misconduct.

**REMEDIES; MODIFICATION OF AUTOMATIC STAY**

19.     <u>Remedies and Stay Modification.</u>

(a)     Except as otherwise provided in this Final Order, the automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(i)     whether or not a Default or an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Final Order has occurred (A) to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received

35

by the DIP Agent and the DIP Lenders under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, (B) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (C) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (D) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this Final Order;

        (ii)     Subject to paragraph 19(a)(iv) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Agent, for itself and on behalf of the DIP Lenders, or the DIP Lenders, as applicable, upon the occurrence and during the continuance of an Event of Default, and without any interference from the Debtors or any other party interest but subject to five (5) business days' prior written notice (which notice may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to the Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Final Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) cease making DIP Loans and/or suspend or terminate any commitments of the DIP Agent and the DIP Lenders under the DIP Loan Documents; (B) declare all DIP Obligations immediately due and payable; (C) in the case of the DIP Agent and the DIP Lenders, take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale, or to sell the DIP Collateral; (D) in the case of the DIP Agent and the DIP Lenders, foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (E) set off any amounts held as Cash Collateral (including, without

limitation, in any Cash Collateral account held for the benefit of the DIP Agent and DIP Lenders); and/or (F) exercise any other default-related rights and remedies under the DIP Loan Documents or this Final Order. The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents.

(iii)     Immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Final Order, the DIP Agent, for itself and the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(iv)     The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  During the Remedies Notice Period, the Debtors shall not be permitted to use any Cash Collateral or any DIP Loan proceeds except to pay expenses (at no more than $25,000) that are absolutely necessary to preserve the Debtors' going concern value.  The Debtors, the Creditors' Committee, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the sole issue at any hearing to re-impose the automatic stay or to obtain any other injunctive or other relief shall be limited to whether or not an Event of Default has occurred and is continuing under the DIP Loan Documents.

(v)     If the DIP Agent and/or DIP Lenders are entitled, and have elected in accordance with the provisions hereof, to enforce their respective liens or security interests or

37

exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent or the DIP Lenders in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent or the DIP Lenders (including, without limitation, any collateral liquidator, financial advisor, or consultant), (B) providing the DIP Agent or the DIP Lenders and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or the DIP Lenders or their respective representatives, (C) performing all other obligations set forth in the DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's or the DIP Lenders' enforcement of rights.

(vi)    Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of or an event of default under this Final Order, or any other Termination Event, in all such instances notice of which shall be provided to the Creditors' Committee and the United States Trustee, and except as otherwise provided in the DIP Loan Documents with respect to the Remedies Notice Period, the DIP Agent and the DIP Lenders shall have no further obligation to provide financing under the DIP Loan Documents and the DIP Agent and the DIP Lenders shall have no further obligation to permit the continued use of Cash Collateral.

(vii)   Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of this Final Order, or any Termination Event, the DIP Lenders may at all times continue to collect and sweep cash as

38

provided herein, including by a Sweep under paragraph 24 hereof, or as provided in the DIP Loan Documents.

(viii)   This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

### MISCELLANEOUS

20.   <u>Limitation on Section 506(c) Claims</u>.  No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the DIP Agent or the DIP Lenders, or any of their respective claims, the Carve-Out, or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the DIP Agent or the DIP Lenders.  No action, inaction or acquiescence by the DIP Agent or the DIP Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Agent or the DIP Lenders, any of their respective claims, the Carve-Out, or the DIP Collateral.

21.   <u>No Marshaling</u>.  Neither the DIP Agent nor the DIP Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.  Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents.

22.   [Reserved].

23.    Additional Perfection Measures. The DIP Liens and Replacement Liens shall be perfected by operation of law immediately upon entry of this Final Order. None of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, without limitation, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/ authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)    If the DIP Agent, in its sole discretion, chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP Agent is hereby authorized, but not directed to, take such action or to request that Debtors take such action on its behalf (and the Debtors are hereby authorized and directed to take such action) and:

(i)    any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Final Order; and

(ii)    no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent may, in its sole discretion,

40