IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-20130 |
| | § | |
| AUTOSEIS, INC., *et al.*,[1] | § | CHAPTER 11 |
| | § | |
| Debtors. | § | JOINTLY ADMINISTERED |
| | § | |

**OBJECTION OF RICHARD A. DEGNER TO THE FIRST AMENDED DISCLOSURE
STATEMENT FOR THE JOINT PLAN OF REORGANIZATION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Comes now, Richard A. Degner, a party-in-interest herein, and respectfully files this

Objection to the First Amended Disclosure Statement for the Joint Plan of Reorganization of the

Debtors Pursuant to Chapter 11 of the Bankrutpcy Code ("First Amended Disclosure Statement")

and would respectfully state the following:

**PARTY-IN-INTEREST**

1.    Richard A. Degner (hereinafter "Degner"), residing at 800 Mulberry Lane, Bellaire,

Texas 77401, is a party-in-interest herein.  He is the owner of the trademark licensed by the

Debtor pursuant to that Servicemark License dated January 10, 2006.  Without admitting that the

Servicemark License agreement is an executory contract that may be assumed, it is presently

unclear whether the Debtors "intend" to assume or reject the agreement. Further, Degner,

appears to be the subject of action, proposed by the Debtor's First Amended Plan of

Reorganization, designed to strip him of post-petition indemnification rights which are

authorized by the Debtor's By-Laws and Articles of Incorporation.

---

[1]    The Debtors in these Chapter 11 cases are: Autoseis, inc. (5224); Global Geophysical Services, Inc. (4281);
Global Geophysical EAME, Inc. (2130); GGS International Holdings, Inc. (2420); Accrete Monitoring, Inc.
(2556); and Autoseis Development Company (9066).

## ADEQUATE DISCLOSURE

2.     The First Amended Disclosure Statement, according to the Debtors, "sets forth certain information regarding the Company's proposed Restructuring, prepetition operating and financial history, the need to seek chapter 11 protection, significant events that have occurred during the Chapter 11 Cases, and the Debtor's anticipated organization, operations, and liquidity upon successful emergence from chapter 11 protection."   Said information is supposed to provide holders of impaired claims with "adequate information" regarding a debtor's proposed chapter 11 plan.

3.     The Bankruptcy Code defines "Adequate Information" as follows:

> "Information of a kind, and in sufficient detail, as far as is reasonable practicable in light of the nature and history of the debtor, for the condition of the debtor's books and records, that would enable a hypothetical   reasonable investor typical of the holders of claims or interest of the relevant class to make an informed judgment about the plan…[2]

Precisely what type of material constitutes adequate information in a disclosure statement is determined by the courts on a case-by-case basis using a flexible standard.[3]   In *In re Metrocraft Publishing Servs., Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984), the court identified the following "[r]elevant factors for evaluating the adequacy of a disclosure statement:

- The events which led to the filing of a bankruptcy petition;
- A description of the available assets and their value;
- The anticipated future of the company;
- The source of information stated in the disclosure statement;
- a disclaimer;
- the present condition of the debtor while in Chapter 11;
- the estimated return to creditors under a chapter 7 liquidation;
- the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
- the future management of the debtor;

---

[2] 11 U.S.C. §1125(a)(1).
[3] H. Rep. N. 595, 95th Cong., 1st Sess. 408 (1977).

- the chapter 11 plan or a summary thereof;
- the estimated administrative expenses, including attorney's and accountants' fees;
- the collectability of accounts receivable;
- financial information, data, valuations or projections relevant to the creditor's decision to accept or reject the chapter 11 plan;
- information relevant to the risks posed to creditors under the plan;
- the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;
- litigation likely to arise in a non-bankruptcy context;
- tax attributes of the debtors; and
- the relationship of the debtor with affiliates.[4]

These factors, or some variation thereof, have been adopted by a number of courts as an aid in measuring the adequacy of the information contained is disclosure statements.[5]  A disclosure statement "must clearly and succinctly inform the average unsecured creditors of what it is going to get, when it is going to get it, and what contingencies there are to getting a distribution."[6]

## OBJECTION TO FIRST AMENDED DISCLOSURE STATEMENT

4.   Degner hereby asserts that the First Amended Disclosure Statement lacks Adequate Information as required by Section 1125 of the Bankruptcy Code.  At a bare minimum, the First Amended Disclosure Statement does not provide adequate information and should be supplemented with regard to the following items:

- A number of Agreements and Other Documents Relating to or Governing the Reorganized Debtors Have Not Been Negotiated or Finalized

The Debtor has indicated in the First Amended Disclosure Statement that a number of Agreements relating to or Governing the Reorganized Debtor have not been finalized and further

---

[4] *In re Metrocraft Publshing Serv., Inc.,* 39 B.R. 567,568 (Bankr. N.D. Ga. 1984)
[5] See e,g., *In re U.S. Brass Corp.,* 194 B.R. 420, 424 (Bankr. E.D. Tex. 1966); *Westland Oil Development Corp v. MCorp Management Solutions, Inc.,* 157 B.R. 100, 102 (Bankr. S.D. Tex. 1993); *In re Eastern Maine Electric Coop., Inc.,* 125 B.R. 329, 333 (Bankr D. Me. 1991); *In re Ferretti,* 128 B.R. 16, 18 (Bankr. D.N.H. 1991); In re *Cardinal Congregate I,* 121 B.R. 760,765 (Bankr. S.D. Ohio 1990); *In re Microwave Products of America, Inc.,* 100 B.R. 376, 378 (Bankr. W.D. Tenn 1989); *In re Neutgens,* 87 B.R. 128, 129 (Bankr. D. Mont. 1987).
[6] *In re Feretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

that:

> "the terms and conditions of these agreements and other documents may adversely affect the Reorganized Debtors, their operations, their financial condition or results of operations and/or the holders of New Common Stock in a number of ways that cannot be predicted at this time.  In addition, certain of the documents described in this First Amended Disclosure Statement have not been finalized, and the terms and provisions of the **final agreements and other documents include other material terms not included in the summaries contained herein [emphasis added]**.   Furthermore, failure to finalize or successfully negotiate these documents or obtain any required approvals, including any required approvals from the Requisite Investors, may delay or prevent consummation of the Plan"

Degner would argue that said disclosure is definitely NOT the sort of disclosure that adequately informs creditors.  To disseminate information that there are documents "out there" which form the basis of the plan that have not been finished or finally negotiated, for which no summaries are available and which may severely impact the creditors DOES THE EXACT OPPOSITE of what a disclosure statement is supposed to do i.e. adequately inform.  The above statements leave the creditors and/or parties-in-interest wondering exactly how those documents impact the plan and may affect them.

For instance, Degner is the perfect example of someone that could be adversely affected by the disclosure of those documents, what they are and what they do.  The Debtors have made mysterious references in various places throughout the First Amended Disclosure Statement that they are amending their By-Laws and Articles of Incorporation.  Does that mean each and every debtor?  The answer is unknown.  Do they operate under one set of By-Laws?  The answer is unknown.   Further, the Debtors give no legal authority as to how they are making the amendments without having the existing shareholders vote on the amendments as required by the present documents.  The Debtors are carrying on their businesses during the pendency of their

chapter 11 cases.  Pursuant to the provisions of the Bankruptcy Code, a debtor in possession must comply with the Code and non-bankruptcy law.  Shareholders presently exist and equity will not be cancelled until the confirmation.  If the Debtors are amending their By-Laws and Articles of Incorporation pre-confirmation they should be complying with applicable documents and state law which requires a Shareholder vote. Upon what authority and under what legal theory or Code section can the Debtors simply state that shareholders are "deemed to have approved" the amendments?  The Debtors should include that information in its disclosures.

If the Debtors are amending their By-Laws and Articles of Incorporation post-confirmation then a non-debtor's post-bankruptcy rights should pass through the bankruptcy process unaffected.  Yet the indication from the First Amended Disclosure Statement is that this is not going to happen.  Quite the contrary, the Plan proposes to strip Degner's post-petition rights which are contained in the By-Laws and the Articles of Incorporation.   If the Amended By-Laws and/or Amended Articles of Incorporation are the "unfinished documents" referred to by the Debtors, they should be finalized and summaries made available to creditors that inform them of the implications of what the documents may do and so that the legality of the documents can be assessed.  Again, going back to Degner's example, if the documents purport to strip Degner of valuable post-petition rights, this may give rise to an administrative expense claim. That potential administrative expense claim should be quantified for the creditors and included in the Debtors' analysis of treatment of administrative expense claims.  It is impossible to quantify any such potential claims, unless and until the Debtor finalizes the documents and discloses the information to creditors.   In this instance,  Degner is just an example.  Degner could be absolutely wrong as to the above example but cannot make that determination because the information that is supposed to be included in the First Amended Disclosure Statement is

severely lacking.  What other claims could arise due to the finalization of the documents which may lead to administrative claims which could impact the creditors and the plan?  The debtor should be required to amend the First Amended Disclosure Statement to disclose the finalized documents and at the very least give an adequate summary of what they are and what implications they may have on creditors and/or parties-in-interest.  Degner cannot provide any suggested disclosure language regarding the documents as the documents are a mystery.  What does documents relating to and governing the Debtors mean?  What other documents described in this First Amended Disclosure Statement have not been finalized and what are the terms and provisions of those agreements?

- Plan releases

There is an inadequate description of the circumstances that give rise to the grossly overbroad and impermissible third party releases.  The purported releases constitute a clear violation of Fifth Circuit law regarding granting non-consensual non-debtor releases.[7]  What valuable services were rendered to the Debtors that would necessitate the releases?  The employees of the Debtor were afforded a KERP to compensate them for their services. It is impossible to determine exactly what they received via the KERP as most of the compensation and benefits awarded were under seal.  While Degner does not intend to suggest that a limited release of the plan proponents and committee professionals are per se impermissible insofar as it is limited to actions taken since the Petition Date and related to the Plan, the Court should not permit the plan process to be used as a means of stripping the Debtors estate of potentially valuable claims against any and all potential parties.

---

[7] *See, e.g., Matter of Zale Corp.*, 62 F.3rd 746 (5th Cir. 1995) (holding that a release of officers and directors was an impermissible third party release violative of section 524(e) of the Bankruptcy Code).

- <u>Executory Contracts</u>

The First Amended Disclosure Statement indicates that the Plan provides for the assumption of certain executory contracts and unexpired leases. The Debtors' have indicated that their business may be negatively affected if they are unable to assume certain of their executory contracts but gives no estimates as the financial impact on the Debtors if the contracts cannot be assumed. The Debtors have asserted:

> " that the assumption of any agreement shall result in the full release and satisfactions of any Claims or defaults whether monetary on nonmonetary, and the deemed waiver of any termination right or remedial provision arising under any such agreement,  Executory Contract or Unexpired Lease at any time prior to the effective date of its assumption, or as a result of such assumption, the transactions contemplated by the Plan or any changes in control or ownership of any Debtors during the Chapter 11 Cases or as a result of the implementation of the Plan. Absent consent by the parties to the contracts there is no guarantee that the executory contracts may be assumed wherein those terms and conditions may be expunged from the executory contract and/or unexpired lease. There is no guarantee that such consent either would be forthcoming or that conditions would not be attached to any such consent that makes assuming the executory contracts in question unattractive.  The Debtors then would be required to either forego the benefits offered by such executory contracts or find alternative arrangements to replace them".

Despite this disclosure, given that the Debtors have opted not to file the Plan Supplement until after the objection deadline and after the hearing on the First Amended Disclosure Statement, it is impossible for the creditors to determine even the range of the cure cost of the assumed contracts.   The Debtor has estimated the cure cost at approximately $7.5 million. Where did they get that estimate?  Either they have the information or they don't.  The Debtors should be made to disclose the information on which they base the cure cost estimate.  Further, the Debtors provide no information regarding the estimates of potential rejection claims which would increase the amount of class 5 claims.  Said rejections claims could drastically reduce the

distribution ratios to trade creditors.  The amount of the potential reduction should be disclosed and/or at least a range of the potential distribution reduction should be provided.

## RESERVATION OF RIGHTS

5.    Degner reserves all rights to assert any additional objections as may be necessary in the event the Debtors file any further amendments to the Disclosure Statement containing all or a portion of the missing information and materials identified above or should additional objections arise on account of other documents filed by the Debtor.  Further, Degner reserves the right to object to the confirmation of any proposed plan of reorganization, including the Plan described in the First Amended Disclosure Statement.

## JOINDER

6.    Degner reserves all rights to join in any other objections to the First Amended Disclosure Statement which may be filed by other parties.

For the reasons set forth above, Degner respectfully request that the Court deny approval of the Disclosure Statement, and grant such other and further relief as it deems just and proper.

Dated this 22nd day of October, 2014.

Respectfully submitted,

BAKER & HOSTETLER LLP

By:      */s/ Pamela Gale Johnson*
       Pamela Gale Johnson
       State Bar No. 10777700; Fed ID No. 4481
       811 Main Street, Suite 1100
       Houston, Texas 77002-6111
       Telephone:  (713) 646-1324
       Facsimile:  (713) 751-1717
       E-mail:  pjohnson@bakerlaw.com

       Marc D. Powers
       (Pro Hac Vice per the Court's 6/12/2014 Order)

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone:  (212) 589-4216
Facsimile:   (212) 589-4201
Email:  mpowers@bakerlaw.com

**ATTORNEYS FOR RICHARD A. DEGNER,
AN INTERESTED PARTY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF system to all registered ECF users appearing in the case and the parties identified below on October 22, 2014.

**Debtors**:

Global Geophysical Services, Inc.
ATTN: James E. Brasher
13927 S. Gessner Rd.
Missouri City, Texas 77489

**Counsel to the Debtors**:

Baker Botts L.L.P.
ATTN: C. Luckey McDowell and Ian Roberts
2001 Ross Avenue
Dallas, Texas 75201
Facsimile: (214) 953-6503
Email:  luckey.mcdowell@bakerbotts.com
         ian.roberts@bakerbotts.com

**Counsel to the DIP Lenders**:

Akin Gump Strauss Hauer & Feld, LLP
ATTN: Arik Preis
Bank of America Tower
New York, NY 10036
Facsimile: (212) 872-1002
Email:  apreis@akingump.com

**Counsel to the Official Committee of Unsecured Creditors**:

Greenberg Traurig, LLP
ATTN: Clifton Jessup and Shari L. Heyen
1000 Louisiana, 17th Floor
Houston, Texas 77002
Facsimile: (713) 374-3564
Email:  jessupc@gtlaw.com
          heyens@gtlaw.com

**United States Trustee**:

Office of the United States Trustee
ATTN: Barbara C. Jue
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78401
Facsimile: 361) 888-3263
Email:  barbara.c.jue@usdoj.gov

*/s/ Pamela Gale Johnson*
Pamela Gale Johnson