IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § | CASE NO. 14-20130 |
| | § | |
| AUTOSEIS, INC., *et al.*,[1] | § | CHAPTER 11 |
| | § | |
| Debtors. | § | JOINTLY ADMINISTERED |
| | § | |

## OBJECTION OF RICHARD A. DEGNER TO THE CONFIRMATION OF THE DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION AS REFORMED

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Comes now, Richard A. Degner, a party-in-interest herein, and respectfully files this Objection to the Debtors' Second Amended Plan of Reorganization As Reformed and would respectfully state the following:

### I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) (2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. THE DEBTORS' BANKRUPTCY

3.      The above-captioned Debtors filed a petition for relief on March 25, 2014, pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") [Docket No. 1].

4.      On October 28, 2014, the Debtors' filed the Second Amended Disclosure Statement (the "Disclosure Statement") [Docket No. 720].  On November 3, 2014, the Debtors

---

[1]   The Debtors in these Chapter 11 cases are: Autoseis, Inc. (5224); Global Geophysical Services, Inc. (4281); Global Geophysical EAME, Inc. (2130); GGS International Holdings, Inc. (2420); Accrete Monitoring, Inc. (2556); and Autoseis Development Company (9066).

filed the Second Amended Plan of Reorganization, As Reformed (the "Reformed Plan") [Docket No. 751].

5.      On October 30, 2014, this Court signed an order approving the Disclosure Statement [Docket No. 732].

6.      On December 2, 2014, the Debtors' filed their Plan Supplement, including exhibits A through N [Docket No. 870].

## III. BACKGROUND

7.      Richard A. Degner (hereinafter "Degner"), residing at 800 Mulberry Lane, Bellaire, Texas 77401, is not a creditor of the estate but is a party-in-interest herein.

8.      Degner is the owner of the Global Geophysical Services Logo and granted the Debtors the right to use the mark, pursuant to the terms of the Servicemark License, while at all times retaining ownership of the mark.

9.      As described in the Disclosure Statement and Reformed Plan, the Debtors intend to assume certain executory contracts.  Exhibit No. J to the Plan Supplement delineates the executory contracts that are to be assumed.  Included in the list is the Servicemark License Agreement between the Debtors and Degner.

10.      Degner has not consented to the assumption of the Servicemark License and filed an objection to the assumption of the Servicemark License Agreement (hereinafter the "Servicemark License") [Docket No. 876].

11.      Degner herein files this Objection to Confirmation based upon non-compliance with 11 U.S.C. §1129(a).

## IV. OBJECTION TO CONFIRMATION OF THE REFORMED PLAN

12.   Violation of 11 U.S.C. § 1129(a)(1)

11 U.S.C. 1129(a) indicates that the Court shall confirm a plan ONLY if all of the….requirements of 1129(a) are met.  11 U.S.C. § 1129(a) (1) requires that the plan complies with the applicable provisions of [this] title.  Degner asserts that the Reformed Plan cannot be confirmed as it does not comply in three material respects with the applicable provisions of Title 11 [11 U.S.C. §§ 101 et seq.].

(A)      Particularly, the Debtors' Reformed Plan attempts to vitiate the provisions of 11 U.S.C. § 365 which sets out the requirements for the assumption or rejection of executory contracts.  The 5th Circuit in *In re Nat'l Gypsum Co.*, 208 F.3d at 505 noted:

> The Bankruptcy Code provides special rules for the treatment of executory contracts and unexpired leases during chapter 11 reorganization. See 11 U.S.C. 365 (1994). In general, section 365 allows "the trustee, subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor".  Id. Under Section 365, a debtor may elect one or two options when assessing how to treat an executory contract or unexpired lease to which it is a party; the contract or lease may either be rejected or assumed.

However, it is well recognized that when a debtor assumes an executory contract, it must assume the entire contract, *cum onere*.  The debtor must accept both the benefits and the obligations of the executory contract. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513,528, 79 L. Ed. 2d 482, 104 S. Ct. 1188 (1984). *See also Adventure Resources, Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir. 1998) ("That the obligations of an executory contract are accepted along with its benefits is made plain by the Bankruptcy Code's requirement that, as conditions of the contract's assumption, the debtor cure any existing default and compensate all non-debtor parties for actual pecuniary losses that have resulted therefrom").

The Reformed Plan purports to assume certain executory contracts as specified in the Plan Supplement.  However, the method of assumption of Degner's executory contract does not comply with the provisions of Section 365.  The Reformed Plan seeks to assume only those portions of the contract that are advantageous to the Debtor and gut those provisions that the Debtors apparently deem undesirable.  The effect of such assumption flies in the face of the requirements of Section 365.  Specifically, Section 3.2 of the Servicemark License includes a "Change on Control" (the "CIC") provision which is and/or will be in default.  Pursuant to Section 3.2 of the Servicemark License, a CIC occurs when:

> 3.2.1   More than fifty percent (50%) of the outstanding voting securities of an Entity are sold or otherwise transferred to any Entity which was not a Related Entity of the Entity as of the date of this License; or
>
> 3.2.2   An Entity is merged or consolidated, whether (i) by acquisition, (ii) by statutory merger, or (iii) by any other means with or into another Entity and as of a result of such merger or consolidation more than fifty percent (50%) of the outstanding voting securities of the surviving Entity are not owned by the Entities which were in control of that Entity as of the date of this License; or
>
> 3.2.3   An Entity in physical possession of the Mark sells or transfers all or substantial part of its assets to another Entity (which is not a Related Entity of the Entity performing the transfer); or
>
> 3.2.4   The individuals who constitute the Entity's board or directors or managers or (if that Entity's management is not vested in one or more managers) members on the date set out at the beginning of this License (its "Incumbent Management) cease for any reason to constitute at least a majority thereof, provided that any individual becoming a director, manager, or (if applicable) member after that date who was nominated for such position by the directors, managers, or (if applicable) members comprising the Incumbent Management shall be deemed to be a member of the Incumbent Management for purposes of this Article 3.3.4.

The Debtors are aware that they cannot cure this default as required by Section 365 and therefore seek to gut the CIC provision of the executory contract by the inclusion of the following provision in the Reformed Plan.  Section 8.4 of the Reformed Plan provides:

> Assumption of any agreement, Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, and the deemed

4

waiver of any termination right or remedial provision arising under any such agreement, Executory Contract or Unexpired Lease at any time prior to the effective date of its assumption, or as a result of assumption, the transactions contemplated by the Plan or any changes in control or ownership of any Debtors during the Chapter 11 Cases or as a result of the implementation of the Plan. For the avoidance of doubt, any clause or provision of any agreement between the Debtor and any other party (including any holder of a Claim or Interest under the Plan) that purports to modify the rights of such other party based on the Plan, events relating to the Chapter 11 Cases, or any of the transactions contemplated by the Plan shall be ineffective, including without limitation that certain Service Mark Agreement, dated January 10, 2006, by and between GGS and Richard Degner.

This provision in the Reformed Plan is impermissible under the provisions of Section 365 of the Bankruptcy Code. There is nothing in Section 365 that allows the Debtor to modify the terms of the contract. The Debtors must make the choice to either assume the contract with all of its burdens or reject the contract. Absent compliance with Section 365 of the Bankruptcy Code, the Debtors' Reformed Plan cannot be confirmed.

(B)   <u>Violation of 11 U. S. C. § 1129(a)(1)</u>

In addition to the above, the Reformed Plan does not comply with 11 U.S.C. § 1129(a)(1) in that the Reformed Plan contains releases, injunctions and exculpatory clauses that also violate the Bankruptcy Code due to their scope and/or subject matter. The Reformed Plan has four provisions that relate to releases, an exculpation clause and/or an injunction, (i) the Debtors' Release, (ii) the Voluntary Release, (iii) the Exculpation Clause and (iv) the Injunction. At first blush, the Court must review of definition of Released Parties and Releasing Parties. The Court must then review the provisions related to the releases, exculpation clause and the injunction provisions. Degner asserts that there is an important distinction between the Fifth Circuit's mandate against non-debtor releases in Section 524(e) and the ability of the Debtor to settle claims in the Reformed Plan pursuant to Section 1123(b)(3)(A).

Moreover, Degner asserts that the language in Sections 12.5, 12.6, 12.7 and 12.8 is overly broad and pushes the Reformed Plan into the realm of releases forbidden by *In re Pacific Lumber*, 584 F.3d 229, 252-53 (5th Cir. 2009) and *Matter of Zale Corp.*, 62F.3d 746 (5th Cir. 1995).

The Debtors' Release can only be effective to the extent that it seeks to release an interest in a claim held by the Debtors' estate.  The release cannot release a personal claim which is not property of the estate such as a federal securities action arising under section 16(b) of the Securities Exchange Act of 1934 (as amended).  The attempt to release such a claim, which can be inferred in the language of the Debtors' Release is inappropriate and should be ineffective.

The Voluntary Releases appear to go too far inasmuch as it required creditors to affirmatively opt out of the release.  There is nothing in the Bankruptcy Code that provides for such opt out procedures and they appear to be an end run around the Fifth Circuit's mandate against third party releases.  The Exculpation Clause does the same.

Regarding the Injunction provision, the Fifth Circuit held that Section 105 does not permit a bankruptcy court to enjoin claims against non-debtors where no alternative means was left for the non-parties to assert their legitimate contractual rights. *Matter of Zale Corp.*, 62 F.3d 746,760 (5th Cir. 1995).  Specifically, the injunction provisions seek protection for the Debtor and all parties defined as Released Parties.  It is worded so broadly as to cover anyone who "MAY HOLD CLAIMS".  However, this provision would enjoin third parties such as Degner from pursuing cross claims and contribution claims from the Released Parties.

The proposed injunction is inappropriate as to the Committee.  As noted in *In re Bigler*, 442 B. R. 537 (S.D. Tex. 2010), while "the Committee, its members, and its representatives are eligible for qualified immunity for acts or omissions during the pendency of the Chapter 11 case,

pursuant to *Pacific Lumber* such immunity may not include willful or gross misconduct, nor acts outside the scope of their duty, not may it extend outside the time period of the pendency of the case".  See 584 F.3d at 253; *In re Pilgrim's Pride Corp.*, No. 08-45664-DML-IL, 2010 WL 2000 (Bankr. N.D. Tex. Jan. 14, 2010) ("…committees and their members are entitled to qualified immunity for any acts or omissions during a [C]hapter 11 case that were within the scopes of their duties").  The Injunction provision in the Reformed Plan has no such limitations and there the provisions are impermissible.

Further, the injunction provisions are inappropriate as applied to third parties who are not entitled to a discharge under the plain language of Section 524(e).  The Injunction provisions are "exactly the sort of release provisions that the Fifth Circuit forbade in Pacific Lumber:  it releases the Released Parties from liability for non-willful misconduct during the pendency of the bankruptcy".  584 F3d at 252.  Degner would assert that the Debtors' discharge is limited to those claims enumerated in Sections 524 and 1141 and the "Chapter 11 Process is not intended to provide an ongoing, all encompassing, and general liability shield for the debtors." *See Bigler* at 442 B.R.548

(C)    Violation of 11 U.S.C. §1129(a)(3)

The Reformed Plan was not proposed in good faith vis-à-vis Degner.  The Reformed Plan strips Degner of valuable third party post-petition rights.  Degner was the founder, chairman, and director of the Debtors and resigned as CEO of the company in or about October, 2012. Pursuant to the Debtors' Articles of Incorporation, Degner was afforded indemnification rights as to suits and causes of action pertaining to the operation of the business.  Subsequent to Degner's departure, several class action lawsuits were filed in the Southern District of Texas alleging violations of the federal securities laws.  Three lawsuits were filed against numerous

7

officers and directors of the company, including Degner and have been subsequently consolidated before the Honorable Vanessa Gilmore.  The Debtors' Reformed Plan seeks to release only the present officers and directors and include them in the injunction to prevent third parties from going forward with the lawsuit.  It would effectively prevent Degner from asserting various cross claims and from seeking contribution claims in the event of a Final Order. In addition, if the injunction provision remains intact, it potentially leaves Degner as the proverbial last man standing in the lawsuit.  As a court of equity, this Court should not leave Degner to singularly shoulder the burdens and potential liabilities of the Debtors' current officers and directors.

## V.  RESERVATION OF RIGHTS

13.    Degner herby expressly reserves the right to amend and/or supplement this Objection in the event the Debtors file any further amendments to the Reformed Plan or should any additional objections  arise on account of other documents filed by the Debtors and/or third parties.

## VI. JOINDER

14.    Degner reserves all rights to join in any other objections to the Confirmation of the Reformed Plan which may be filed by other parties.

WHEREFORE, Degner respectfully request that the Court deny confirmation of the Reformed Plan and grant such other and further relief as it deems just and proper pursuant to law or in equity.

8

Dated this 12th day of December, 2014.

Respectfully submitted,

BAKER & HOSTETLER LLP

By:     */s/ Pamela Gale Johnson*
        Pamela Gale Johnson
        State Bar No. 10777700; Fed ID No. 4481
        811 Main Street, Suite 1100
        Houston, Texas 77002-6111
        Telephone:  (713) 646-1324
        Facsimile:  (713) 751-1717
        E-mail:  pjohnson@bakerlaw.com

        Marc D. Powers
        (Pro Hac Vice Admitted)
        BAKER & HOSTETLER LLP
        45 Rockefeller Plaza
        New York, New York 10111-0100
        Telephone:  (212) 589-4216
        Facsimile:  (212) 589-4201
        Email:  mpowers@bakerlaw.com

        **ATTORNEYS FOR RICHARD A. DEGNER,
        AN INTERESTED PARTY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF system to all registered ECF users appearing in the case and the parties identified below on December 12, 2014.

**Debtors**:

Global Geophysical Services, Inc.
ATTN: James E. Brasher
13927 S. Gessner Rd.
Missouri City, Texas 77489

**Counsel to the Debtors**:

Baker Botts L.L.P.
ATTN: C. Luckey McDowell and Ian Roberts
2001 Ross Avenue
Dallas, Texas 75201
Facsimile: (214) 953-6503
Email:  luckey.mcdowell@bakerbotts.com
            ian.roberts@bakerbotts.com

**Counsel to the DIP Lenders**:

Akin Gump Strauss Hauer & Feld, LLP
ATTN: Arik Preis
Bank of America Tower
New York, NY 10036
Facsimile: (212) 872-1002
Email:  apreis@akingump.com

**Counsel to the Official Committee of Unsecured Creditors**:

Greenberg Traurig, LLP
ATTN: Clifton Jessup and Shari L. Heyen
1000 Louisiana, 17th Floor
Houston, Texas 77002
Facsimile: (713) 374-3564
Email:  jessupc@gtlaw.com
            heyens@gtlaw.com

**United States Trustee**:

Office of the United States Trustee
ATTN: Barbara C. Jue

605564729.1

606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78401
Facsimile: 361) 888-3263
Email:  barbara.c.jue@usdoj.gov

                                        */s/ Pamela Gale Johnson*
                                        Pamela Gale Johnson